Matao C. YOKENO, Plaintiff–Appellee,

v.

Ramon C. MAFNAS, Defendant–Appellant.

No. 91–15745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1992.

Submission Deferred March 16, 1992.

Resubmitted Aug. 3, 1992.

Decided Aug. 28, 1992.

confirming the plan, the trustee shall make payments to creditors under the plan."

Jay H. Sorensen, Saipan, Com. of Northern Mariana Islands, for defendant-appellant.

Stephen J. Nutting, White, Novo–Gradac & Thompson, Saipan, Com. of Northern Mariana Islands, for plaintiff-appellee.

Before: BOOCHEVER, BEEZER, and TROTT, Circuit Judges.

BOOCHEVER, Circuit Judge:

Ramon Mafnas appeals the district court's entry of summary judgment against him in Matao Yokeno's action to quiet title to a leasehold interest in real property located on the island of Saipan, in the Commonwealth of the Northern Mariana Islands (CNMI or Commonwealth). We conclude that summary judgment was improper because the district court's subject matter jurisdiction over Yokeno's claim has not been established. Accordingly, we vacate the judgment and remand.

### BACKGROUND

The underlying property dispute in this case centers on a provision of the CNMI Constitution which restricts acquisition of certain interests in land—permanent freehold interests and leasehold interests exceeding fifty-five years—to persons of Northern Marianas descent. CNMI Const., art. XII, §§ 1, 3. The property transactions in question represent an attempt to comply with the letter of the constitutional restriction by severing the freehold interest from the leasehold interest while giving the lessee power to designate a freehold grantee of CNMI descent. The plaintiff, Matao Yokeno, is Japanese. He is the leaseholder of a 55–year lease in a parcel of land at San Roque, Saipan, originally owned by the defendant, Ramon Mafnas. Mafnas is of CNMI descent.

The series of conveyances and assignments in Yokeno's chain of title began in April 1980 when Mafnas entered into an exclusive agency listing agreement with Randall Fennell, a local attorney, to sell or lease the parcel. A month later, Mafnas executed a 40–year lease for a total of $75,000, plus interest, with Fennell and two other attorneys (the Fennell group), along with a separate agreement giving the lessee the power to designate a grantee of CNMI descent to whom Mafnas would convey the fee interest for $10.00. In December 1984, Mafnas conveyed the fee interest to Fennell's secretary Antonia Villagomez, who is of CNMI descent. In November 1985, Villagomez conveyed the fee interest to Marian Aldan–Pierce, a friend of Fennell's, who is also of CNMI descent.

In September 1987 the lessees and the fee holder together conveyed their interests to a new grantee and a new lessee under a purchase and lease agreement. Aldan–Pierce conveyed her fee interest to Ana Guerrero Little, who is of CNMI descent. The Fennell group assigned its remaining leasehold interest to Nansay Micronesia, Inc. (Nansay), a CNMI corporation and subsidiary of Nansay, Inc., a Japanese corporation. Yokeno, Nansay Micronesia's president and incorporator, represented the corporation in this transaction. The total price was $995,940, of which 98% was to be paid to the Fennell group for the leasehold interest and 2% to Aldan–Pierce for the fee interest. Shortly thereafter Little and Nansay Micronesia rescinded the original lease and entered into a new 55–year lease. At the same time Yokeno, on

behalf of Nansay Micronesia, executed a mortgage securing a promissory note for $597,564, with the Fennell group as mortgagee. The leased property was to become part of the site on which Nansay proposed to develop a beachfront hotel and condominium resort.

In March 1990, Mafnas notified Fennell and Nansay Micronesia of his intent to file suit to void the 1980 lease to the Fennell group and the 1984 conveyance to Villagomez, based in part on the CNMI Constitution's restrictions on land alienation. From March to May 1990, attorneys for the respective parties corresponded about the dispute, and Mafnas furnished Nansay with a draft copy of the complaint he intended to file in Commonwealth Superior Court. On May 13, 1990, Nansay Micronesia assigned its interest in the property to Yokeno. On May 22, 1990, Yokeno both recorded the assignment and filed a quiet title action against Mafnas in federal district court.

Mafnas moved to dismiss the complaint based on lack of subject matter jurisdiction, failure to join an indispensable party, and federal abstention. The district court denied the motion, in part based on its conclusion that Yokeno's complaint raised a federal question conferring federal subject matter jurisdiction. Mafnas then unsuccessfully petitioned this court for a writ of mandamus. In April 1991, on the parties' cross motions for summary judgment, the district court ruled that Yokeno was entitled to judgment, finding that the transactions involving the property fully complied with Article XII of the CNMI Constitution.

In June 1990, approximately three weeks after Yokeno filed suit in federal court, Mafnas filed his complaint, which he had previously furnished to Yokeno, in Commonwealth Superior Court. In May 1991, Yokeno moved for summary judgment based on the res judicata effect of the federal court judgment. The superior court stayed the action pending our resolution of this appeal.

Mafnas timely appeals the federal district court's judgment. We have jurisdiction under 28 U.S.C. § 1291 (1988), and we reverse and remand.

## DISCUSSION

Mafnas bases his appeal on the grounds asserted in his motion to dismiss: lack of subject matter jurisdiction, failure to join an indispensable party, and federal abstention. He also attacks the district court's decision on the merits of Yokeno's claim, citing subsequent decisions of the CNMI Supreme Court voiding transactions in which non–CNMI lessees designated CNMI grantees and provided money for the conveyances, thus creating impermissible resulting trusts in persons not of CNMI descent.[1] Subject matter jurisdiction, however, is the threshold issue. As we discuss below, whether the district court had jurisdiction over Yokeno's complaint remains an open question, requiring remand. Until federal jurisdiction has been established, it would be inappropriate for us to address the remaining issues raised by this appeal.

Yokeno's complaint alleges two bases of federal jurisdiction: existence of a federal question, 28 U.S.C. § 1331 (1988), and diversity of citizenship, 28 U.S.C. § 1332 (1988). In attacking the district court's jurisdiction to entertain Yokeno's suit, Mafnas argues that the complaint does not present a substantial federal question and that diversity was collusively manufactured. The existence of subject matter jurisdiction is a question of law, and our review is de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We review the district court's findings of fact relevant to its determination of subject matter jurisdiction for clear error. *See Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989).

### Federal Question Jurisdiction

Mafnas contests the district court's conclusion that Yokeno's complaint presents a case "arising under" federal law

---

1. *Ferreira v. Borja*, No. 90–047, 1992 WL 62894 (N.M.I. Feb. 18, 1992); *Aldan–Pierce v. Mafnas*, No. 89–003, 1991 WL 165048 (N.M.I. July 5, 1991).

and that therefore it had subject matter jurisdiction under the federal question statute. *See generally* 28 U.S.C. § 1331. At issue are the following allegations in Yokeno's complaint: "If Article XII [of the CNMI Constitution] ... is construed to affect Plaintiff's leasehold interest ... then Article XII is ultra vires, outside of the limited exception of Section 805 [of the Covenant establishing the CNMI as a commonwealth], and contrary to and in violation of Plaintiff's civil and constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution ... to be free from discrimination based upon race, national origin, and association." Complaint at 4. Before analyzing whether Yokeno's complaint presents a substantial federal question, we put these allegations into context by briefly reviewing the relevant provisions of the CNMI Constitution and authorizing federal legislation.

Article XII of the CNMI Constitution provides that "[t]he acquisition of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of Northern Marianas descent." CNMI Const., art XII, § 1. The restricted interests include "freehold interests and leasehold interests of more than fifty-five years including renewal rights." *Id.* § 3. Transactions made in violation of these constitutional provisions "shall be void ab initio." *Id.* § 6. The CNMI Constitution was formulated and adopted pursuant to the Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America, Pub.L. No. 94–241, 90 Stat. 263 (1976), *reprinted as amended in* 48 U.S.C.A. § 1681 note (West 1987) (the Covenant). Section 805 of the Covenant provides that, notwithstanding the United States Constitution and federal law, the CNMI government shall "regulate the alienation of permanent and long-term interests in real property so as to restrict the acquisition of such interests to persons of Northern Mariana Islands descent." The Covenant declares that this restriction on property interests is warranted "in view of the importance of the ownership of land for the culture and traditions of the people of the Northern Mariana Islands, and in order to protect them against exploitation and to promote their economic advancement and self-sufficiency." Covenant § 805.

Yokeno asserts that this case arises under federal law because his complaint alleges violations of the Covenant and of the United States Constitution. We disagree, for our limited jurisdiction cannot be invoked so simplistically. We analyze federal question jurisdiction with reference to the well-pleaded complaint rule. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983) (citations omitted). "Under this rule, a complaint for coercive relief properly invokes federal jurisdiction where its well-pleaded allegations raise a substantial issue of federal law." *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 538 (9th Cir.1985). Where the plaintiff seeks coercive relief under state law, as in a quiet title action, a well-pleaded complaint presents a federal question if the plaintiff's right to such relief "necessarily turn[s] on some construction of federal law."[2] *See Franchise Tax Bd.*, 463 U.S. at 8–9, 103 S.Ct. at 2845–46. Where the federal element is alleged only "in anticipation of avoidance of defenses which it is thought the defendant may interpose," however, the complaint is not

**2.** Mafnas analogizes this preemptive quiet title action to a declaratory judgment action, and urges us to look only to the defendant's threatened claim to determine whether it presents a federal question. This analogy, however, is inapt. In determining whether a declaratory judgment action presents a federal question, we look either to the defendant's threatened action or to the plaintiff's claim, construed as a complaint for coercive relief. A common law quiet title action, such as that involved here, qualifies

as a complaint for coercive relief. *See West 14th Street Comm'l Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 195–96 (2d Cir.) (construing complaint for declaratory relief as a coercive complaint to quiet title in order to determine existence of federal question), *certs. denied*, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107 *and* 484 U.S. 871, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987). Therefore, our inquiry is whether Yokeno's claim to superior title necessarily rests on resolution of a substantial federal issue.

well-pleaded for purposes of subject matter jurisdiction. *See id.* at 10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)). For example, a case does not arise under federal law if "the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise." *Id.* Moreover, jurisdiction under § 1331 is unavailable where the federal claim "is patently without merit." *Brock v. Writers Guild of America, West, Inc.,* 762 F.2d 1349, 1352 n. 3 (9th Cir.1985) (citing *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978)). Examining Yokeno's complaint in light of these guiding principles, we conclude that the federal issues it raises are too remote and insubstantial to support subject matter jurisdiction.

■ In a quiet title action, each party must plead and prove his or her own claim to the property in question. *See, e.g., Hodges Transp., Inc. v. Nevada,* 562 F.Supp. 521, 522 (D.Nev.1983); *see generally* 65 Am.Jur.2d *Quieting Title* §§ 73–80 (1972).[3] The plaintiff's right to relief therefore depends on superiority of title. Yokeno's complaint indicates that his claim to superior title rests on two grounds: compliance of all transactions in his chain of title with Article XII of the CNMI Constitution, and his status as a bona fide purchaser. Compliance with Article XII and qualification as a bona fide purchaser are questions of CNMI law. The complaint alleges viola-

tions of federal law only as a counterdefense in anticipation of Mafnas' defense that under Article XII the original conveyances to the Fennell group and Villagomez are void.[4] Resolution of Yokeno's claim to superior title turns, therefore, not on an interpretation of federal law, but rather on an interpretation of the CNMI common law and the CNMI Constitution. Because the federal law issues Yokeno raises are strictly anticipatory, a federal question does not appear on the face of his well-pleaded complaint. *See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (complaint does not present a federal question if it "alleges some anticipated defense to [the plaintiff's] cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States."); *cf. American Invs–Co Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211, 217 n. 10 (7th Cir.1979) (because nature of cloud on title is not an essential allegation of a state quiet title action, a well-pleaded complaint to quiet title does not raise a federal question where title to land is in doubt because of some matter of federal law) (dictum).

■ Furthermore, the allegations that Article XII violates federal law are not substantial enough to support jurisdiction because they are facially meritless.[5] *See Brock,* 762 F.2d at 1352 n. 3. First, Yokeno's claim that Article XII violates the United States Constitution is contradicted by the plain terms of section 805 of the Covenant, which exempt from constitutional requirements CNMI's restrictions on

---

3. Under CNMI law, in the absence of written or local customary law to the contrary, the common law is applicable, as expressed in the restatements of the American Law Institute (A.L.I.) and to the extent not expressed in the restatements, as generally understood and applied by courts in the United States. 7 C.N.M.I.Code § 3401 (1984). There is no Commonwealth quiet title statute, nor does the Restatement (Second) of Property deal with quiet title actions. We therefore look to general common law principles as applied by U.S. courts.

4. The strictly anticipatory manner in which these federal issues arise is reflected in the conditional language in which they are framed in the complaint: "*If* Article XII ... is construed to

affect Plaintiff's leasehold interest ... *then* Article XII [violates federal law]." Complaint at 4 (emphasis added).

5. In reaching this conclusion, we read Yokeno's complaint as alleging that Article XII facially violates the U.S. Constitution and the Covenant. Yokeno lacks standing to claim that Article XII as applied violates federal law, inasmuch as it has not yet been interpreted and applied to deprive him of a right protected by federal law. *See Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (to establish standing, plaintiff must have suffered a concrete and particularized injury in fact which is actual or imminent and not conjectural).

land alienation. Moreover, in *Wabol v. Villacrusis,* 958 F.2d 1450 (9th Cir.1992), *amending and superseding,* 898 F.2d 1381 (9th Cir.1990), we upheld the validity of section 805. We concluded there that Congress was within its power to enact this exemption from constitutional requirements. *Id.* at 1459–62. Yokeno's constitutional attack on Article XII is thus foreclosed both by the terms of section 805 and our circuit precedent.

■ Second, Yokeno's claim that Article XII exceeds section 805's limited exemption from constitutional requirements, and thus violates the Covenant, is belied by the plain wording of both enactments. Section 805 contains a broad grant of authority to the Commonwealth government to "regulate the alienation of permanent and long-term interests in real property" so as to restrict their acquisition to persons of CNMI descent. Covenant § 805(a). Section 805's constitutional exemption is limited to the regulations adopted pursuant to this grant of authority. Section 805, however, leaves to the Commonwealth government the decision over what types of long-term interests to restrict and therefore over which restrictions are insulated from constitutional attack. *See, e.g., Wabol,* 958 F.2d at 1462 (upholding Article XII's previous restrictions on leaseholds exceeding 40 years). Moreover, we have upheld the enforcement provision of Article XII, which declares any transaction violating its terms "void ab initio," as within section 805's legislative grant of authority. *Id.* at 1462–63. Accordingly, Yokeno's assertion that Article XII violates the Covenant does not present a colorable federal claim.

To summarize, the district court erred in concluding that it had subject matter jurisdiction under the federal question statute, because resolution of a substantial federal question is not necessary to adjudicate Yokeno's quiet title claim under CNMI law. Subject matter jurisdiction, if it exists at all, must therefore be founded on diversity of citizenship, an issue to which we now turn.

*Diversity Jurisdiction*

■ Nansay Micronesia is a CNMI corporation and Mafnas a CNMI citizen. Yokeno is a Japanese citizen and a permanent United States resident, domiciled in California. Diversity of citizenship among the parties, therefore, exists only by virtue of Nansay Micronesia's assignment of its interests in the property to Yokeno. In his motion to dismiss, Mafnas argued that the diversity-creating effect of the assignment was neutralized by the federal anti-collusion statute, which states: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359 (1988). In its order denying Mafnas' motion to dismiss, the district court declined to address the collusion issue because its resolution depended on facts which would be the subject of future discovery. Rather, the court found that subject matter jurisdiction existed under the federal question statute, 28 U.S.C. § 1331.

The court thus had no occasion on summary judgment to revisit the question of whether diversity had been collusively manufactured. That question, however, is now potentially dispositive in light of our conclusion that the federal law allegations in Yokeno's complaint do not support jurisdiction under the federal question statute. The factual assertions in the record raise a substantial issue concerning the collusiveness of the assignment, and thus whether the court had jurisdiction under the diversity statute. Because the district court has not made the factual findings necessary to a determination of collusion, we must remand. We provide the following guidelines to assist the district court in making this determination.

■ The federal anti-collusion statute is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts. *See Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490–91, 23 L.Ed.2d 9 (1969). Certain kinds of diversity-creating assignments warrant particularly close scrutiny. Assignments between parent companies and subsidiaries, and assignments by corporations to their officers or directors " 'are presumptively ineffective to

create diversity jurisdiction.' " *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989) (quoting *Simpson v. Alaska State Comm'n for Human Rights*, 608 F.2d 1171, 1174 (9th Cir.1979)); *see also Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir.1976). To overcome this presumption, the party asserting diversity must show a legitimate business reason for the transfer. *See Dweck*, 877 F.2d at 792. Simply articulating a business reason is' insufficient; the burden of proof is with the party asserting diversity to establish that the reason is legitimate and not pretextual. *See id.* In *Dweck*, for example, we rejected the plaintiff's justification that a corporation's assignment of a claim to its director merely reflected his preexisting financial interest in the disputed contract. We concluded that the assignment was collusive because it was not supported by consideration and because the plaintiff had not shown that the assignor "expressly disavowed any continuing interest in the litigation or its proceeds." *Id.* at 793.

These two factors were dispositive in *Dweck*, yet other factors may be relevant as well. Because of the heightened scrutiny called for in evaluating assignments by business organizations to subsidiaries or officers, the proffered business reason for the assignment must be evaluated in light of the totality of circumstances. Relevant in this inquiry are factors such as the timing of the assignment, the purpose and underlying motivation for the assignment, and the assignee's preexisting interest in the claim. *See, e.g., Prudential Oil*, 546 F.2d at 476–77 (considering continued involvement of parent company personnel in litigation, parent's contemplation of instituting lawsuit prior to assignment, and advantages of gaining federal forum); *Haskin v. Corporacion Insular de Seguros*, 666 F.Supp. 349, 354–56 (D.P.R.1987) (considering assignee's preexisting independent interest in claim, assignor's continued interest in litigation, financing of litigation by assignee, and motivation for assignment); *see also Steele v. Hartford Fire Ins. Co.*, 788 F.2d 441, 444 (7th Cir.1986) (Posner, J.) (suggesting that, unless an "assignment probably would have been made even without a jurisdictional motive," motive should be examined) (dictum); *cf.* 14 Wright, Miller & Cooper, *Federal Practice & Procedure* § 3639, at 114–16 (2d ed. 1985) (relevance of motive in collusion analysis is "somewhat undecided," although some courts have considered it "an important factor in determining whether the policies of Section 1359 have been violated").

■ Yokeno is Nansay Micronesia's incorporator, director, president, and treasurer. Nansay's assignment of its interest in the property to Yokeno is, therefore, presumptively collusive and ineffective to create diversity. In an affidavit submitted in the summary judgment proceedings, Yokeno asserted that the purpose of the assignment was to make Nansay's development project more attractive to investors by removing clouded property interests from Nansay's portfolio. On appeal, Yokeno argues that the legitimacy of this business reason is shown by the consideration he paid, which is recited in the written assignment document, and by his preexisting interest in the property, which stems from his shareholder interest in Nansay's parent corporation and his active role in negotiating and executing the property transactions in question.

Although there is some superficial appeal to these arguments, in deciding whether Yokeno has adequately rebutted the presumption of collusiveness, the district court must delve deeper into the totality of circumstances surrounding the assignment, including the following. In support of his motion to dismiss for lack of jurisdiction, Mafnas submitted evidence that he had, several months before the assignment, informed Nansay that he was planning to file a quiet title action in Commonwealth Superior Court and had furnished Nansay with a copy of the complaint. This evidence also shows that after unsuccessful settlement discussions, Nansay assigned its interests to Yokeno, who almost simultaneously filed a preemptive quiet title action in federal court. We take particular note of Yokeno's statement at oral argument before this court that an "alternate motive" for the assignment was to gain a federal forum where he could obtain a speedier resolution than in the CNMI courts.

This evidence casts doubt on the legitimacy of the business reason advanced by Yokeno. It is possible that a business reason also contributed to the decision to assign the leasehold to Yokeno. In cases where a presumption of collusiveness does not exist, the existence of such dual motives would not render the assignment ineffective for diversity purposes. *See U.S.I. Properties Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 6 (1st Cir.1988) (although "parties may legitimately try to obtain the jurisdiction of federal courts" through lawful means, using a strawman "solely for the creation of otherwise unobtainable jurisdiction" is forbidden by statute), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989); *cf. Steele*, 788 F.2d at 444 (suggesting that otherwise valid assignment is nevertheless collusive if sole purpose is to gain federal forum). This case is different, however, because a presumption of collusion does exist. That presumption is heightened where a jurisdictional motive is apparent. To overcome this heightened presumption, the party asserting diversity must show more than simply a colorable or plausible business reason. The business reason must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum. Where a jurisdictional motive is apparent in assignments between corporations and their subsidiaries or officers, the probability of collusion is simply too great to require a lesser showing.

Justifying an assignment as an attempt to increase the assignor's financial attractiveness by removing a disputed claim from the books, while a factual question to be considered, does not necessarily overcome the presumption of collusiveness. Nor do we find the recital of consideration in the lease assignment, without more, sufficient to establish that business concerns were an independent reason for the assignment. *See Hayden v. Manning*, 106 U.S. 586, 587–88, 1 S.Ct. 617, 618–19, 27 L.Ed. 306 (1883) (court lacked diversity jurisdiction because although valuable consideration was recited in land conveyance, there was no evidence that money was ever paid or that note, mortgage or other security was ever given). Thus, the district court should inquire into the adequacy of the consideration and whether the stated consideration actually changed hands from Yokeno to Nansay Micronesia. The record presently contains no evidence, other than the written assignment signed by Yokeno as both assignee and on behalf of the assignor, to establish that Yokeno actually paid Nansay $100,000 for the assignment or that he legally obligated himself to do so.

The district court should also consider whether Yokeno's five percent interest in Nansay Micronesia's parent company and his personal representation of Nansay in transactions concerning the property, establish adequately the type of independent, preexisting interest indicative of a valid assignment. *Cf. Dweck*, 877 F.2d at 793 (fact that assignee had signed disputed contract did not establish his preexisting interest in claim because assignee had signed contract as an officer of assignor, and not in his individual capacity).

Finally, the record contains no indication that Nansay has "expressly disavowed any continuing interest in the litigation or its proceeds." *Id.* Given the parcel's location as an integral part of a larger tract of land slated for Nansay's hotel development, the logical inference is that if Yokeno is successful in the litigation, the leasehold will be transferred back to Nansay so that the development can proceed as planned. Notably, Yokeno admitted at oral argument on appeal that he would be free to transfer the leasehold back to Nansay in such an event. Disposing of a clouded property interest to increase financial attractiveness is not a legitimate business purpose that would overcome the presumption of collusiveness if, once the cloud is removed, the assignor stands to reap the benefits of the assignee's success.

Because the district court has not yet had the opportunity to make the factual findings necessary to determine whether Yokeno has overcome the strong presumption of collusiveness attending the circumstances of the assignment, we remand for further proceedings in which the court shall determine whether diversity jurisdiction exists. If the court determines it has diversity jurisdiction, it may reconsider its abstention decision in view of our holding

**812**

that Yokeno's complaint does not present a substantial federal question.

### CONCLUSION

We conclude that subject matter jurisdiction cannot be founded on the federal question statute, and REVERSE the district court's holding to the contrary. We VACATE the judgment and REMAND for a determination whether the federal anti-collusion statute applies to the facts of this case to bar diversity jurisdiction as well. If the court finds that it has diversity jurisdiction, it may reconsider its prior abstention decision in light of the absence of a federal question. This panel shall retain jurisdiction over any appeal from the district court's decision.