NIKE, INC., an Oregon corporation, Plaintiff–Appellant,

v.

COMERCIAL IBERICA DE EXCLUSIVAS DEPORTIVAS, S.A., a Spanish corporation; S.A. Distribuciones Internacionales, a Spanish corporation; Carlos Rosal Bertrand, Defendants–Appellees.

NIKE, INC., an Oregon corporation, Plaintiff–Appellee,

v.

COMERCIAL IBERICA DE EXCLUSIVAS DEPORTIVAS, S.A., a Spanish corporation; S.A. Distribuciones Internacionales, a Spanish corporation; Carlos Rosal Bertrand, et al., Defendants–Appellants.

NIKE, INC., an Oregon corporation, Plaintiff–Appellee,

v.

COMERCIAL IBERICA DE EXCLUSIVAS DEPORTIVAS, S.A., a Spanish corporation; S.A. Distribuciones Internacionales, a Spanish corporation; Carlos Rosal Bertrand; Lorenzo Rosal Bertrand; Mario Loscos, Defendants–Appellants.

NIKE, INC., an Oregon corporation, Plaintiff–Appellee,

v.

COMERCIAL IBERICA DE EXCLUSIVAS DEPORTIVAS, S.A., a Spanish corporation; S.A. Distribuciones Internacionales, a Spanish corporation; Carlos Rosal Bertrand; Lorenzo Rosal Bertrand; Mario Loscos, Defendants–Appellants.

Nos. 92–35487, 92–35489, 92–35548, 92–36583.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 31, 1993.

Decided March 31, 1994.

Sean Donahue, Donahue & Associates, Shelley Larkins, John F. McGrory, Jr., Davis Wright Tremaine, Portland, OR, for defendants-appellees-cross-appellants.

Douglas G. Houser, I. Franklin Hunsaker and Stuart D. Jones, Bullivant, Houser, Baily, Pendergrass & Hoffman, Portland, OR, for plaintiff-appellant-cross-appellee.

Before: BROWNING, SCHROEDER and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

These consolidated appeals raise numerous challenges to the proceedings before the district court. We do not address most of these claims, however, because we find that the district court lacked subject matter jurisdiction.

## I

## FACTS AND PROCEDURAL HISTORY

This dispute arises from the alleged breach of several contracts between Comercial Iberica de Exclusivas Deportivas, S.A. (Cidesport) and Nike, International, Ltd. (NIL), a wholly owned subsidiary of Nike, Inc. (Nike).[1] These contracts authorized Cidesport to act as the exclusive distributor of Nike shoes, apparel and bags in several European countries.

Nike brought these claims for breach of contract, fraud and tortious interference with prospective advantage against Cidesport, its parent corporation, and the individual corporate officers of these two corporations (collectively "defendants").[2] Nike claims the district court had jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the action was between a "citizen[ ] of a State," Nike, an Oregon corporation with its principal place of business in Beaverton, Oregon, and "citizens or subjects of a foreign state," the defendants, none of whom are United States citizens. NIL, a Bermuda corporation, was not a party to the action, having assigned its claims to Nike just three days before Nike filed its complaint.

Defendants moved to dismiss for lack of subject matter jurisdiction, alleging that NIL had collusively assigned its claims to Nike to create diversity jurisdiction. The district court granted the motion, reasoning that Nike had not overcome the presumption of collusion applicable because NIL is a wholly-owned subsidiary of Nike. Nike successfully sought reconsideration of this decision. To rebut the presumption of collusion, Nike submitted the affidavit of its corporate counsel, Lindsey Stewart. Stewart explained that the assignment occurred because Nike prefers to litigate in Oregon, particularly the United States District Court in Oregon. Nike considers the district court a superior forum because it is more convenient, more expeditious, less expensive and allows Nike to maintain better control over the litigation.

Nike also submitted an affidavit from George Porter, the Vice President of Finance for Nike and NIL. Porter's affidavit reiterated the language of the assignment, claiming that the assignment was made "for good and valuable consideration." Porter also offered additional reasons for the assignment including Nike's preexisting interest in the enforcement of the contract rights; the similar interest of Nike's newly-created, wholly-owned subsidiary that now performs the tasks Cidesport was previously authorized to do; Nike's ultimate entitlement to NIL's profits; and Nike's interest in protecting its trademarks, trade names, business reputation and goodwill.

Nike offered a third affidavit from Philip Knight, the Chief Executive Officer of NIL and Nike. Knight's affidavit reiterated Nike's position that the assignment of claims was made for good business reasons and not for purposes of improper collusion.[3]

The district court vacated its earlier decision, finding that Nike had overcome the presumption of collusion by showing that it made the assignment for legitimate business purposes, and reinstated the action.[4] In this

---

1. In each contract, the opening paragraphs recite that the agreements are entered into between NIL and Cidesport.

2. Other individuals were initially named as defendants, but the district court granted their motion to dismiss for lack of personal jurisdiction. These individuals were not United States citizens.

3. Nike offered other affidavits but we do not refer to them because they either contain the same general statements or address other aspects of this issue.

4. Ultimately, the district court struck defendants' answer as a sanction for failure to comply with one of its orders. Defendants were considered in default and the district court held a hearing without a jury. Although the district court found

appeal, defendants renew their challenge to the district court's jurisdiction.

## II

## STANDARD OF REVIEW

"The existence of subject matter jurisdiction is a question of law, and our review is *de novo.*" *Yokeno v. Mafnas,* 973 F.2d 803, 806 (9th Cir.1992). "We review the district court's findings of fact relevant to its determination of subject matter jurisdiction for clear error." *Id.; see also Syms v. Castleton Indus., Inc.,* 470 F.2d 1078, 1085 (5th Cir.1972) (applying clear error standard to trial court's finding that assignment was not collusive).

## III

## DISCUSSION

Defendants maintain that the claim assignment from NIL to Nike violates the proscriptions of the federal anti-collusion statute.[5] 28 U.S.C. § 1359. Under that statute, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359.

### A

Before we evaluate this assignment for collusion, we must respond to the district court's suggestion that the assignment did not *create* jurisdiction. The district court speculated that even if NIL had been a plaintiff in this action, diversity jurisdiction would have existed. If this suggestion is correct, the assignment could not violate the anti-collusion statute regardless of Nike's and NIL's motivation.

We draw no distinction between corporations incorporated in a state of the United States and those incorporated in a foreign country when determining the corporation's citizenship for purposes of diversity jurisdiction. *Danjaq, S.A. v. Pathe Communications Corp.,* 979 F.2d 772, 774 (9th Cir.1992). In each instance, the corporation is deemed a citizen of its place of incorporation and the location of its principal place of business. 28 U.S.C. § 1332(c)(1). Our decision in *Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707 (9th Cir.1992), does not alter this result. In that case, we considered the effect of an *individual's* potential citizenship in the United States and Ireland and concluded that "[d]ual citizenship ... does not defeat jurisdiction." *Mutuelles Unies,* 957 F.2d at 711. The distinction between our treatment of individuals and corporations finds its source in the statute establishing diversity jurisdiction. While the statute creates a system of dual citizenship for corporations, *see* 28 U.S.C. § 1332(c)(1), it contains no indication that we should consider the dual citizenship of an individual for purposes of diversity jurisdiction. Accordingly, we do not. *Mutuelles Unies,* 957 F.2d at 711.

NIL, however, is a corporation and we cannot disregard either its site of incorporation, Bermuda, or its principal place of business, which Nike alleges is Oregon,[6] when testing for complete diversity. In this instance, when we treat NIL as an alien citizen due to its Bermuda incorporation, the

---

that Cidesport had breached the contracts, it concluded that Nike had failed to prove damages. The district court granted Nike declaratory relief and awarded it substantial attorney's fees.

**5.** Relying on Rule 3(c) of the Federal Rules of Appellate Procedure, Nike contests our jurisdiction to entertain the issues concerning the district court's entry of a preliminary injunction and its orders holding defendants in contempt and striking their answer. Nike has not expressly questioned our jurisdiction to evaluate for collusion the assignment from NIL to Nike. *See* Fed. R.App.P. 3(c) (requiring notice of appeal to designate order from which party appeals). We

attribute this silence to the nature of the latter issue. *See Kantor v. Commissioner,* 998 F.2d 1514, 1521 (9th Cir.1993) (considering on appeal merits of jurisdictional argument even though not raised below); *Albrecht v. Lund,* 845 F.2d 193, 194, *as amended by,* 856 F.2d 111 (9th Cir.1988) (jurisdictional issue may be raised for first time on appeal).

**6.** The district court did not accept Nike's assertion that NIL's principal place of business is Oregon. For the purpose of this appeal, we need not review this decision because even if NIL's principal place of business is in Oregon the district court lacked diversity jurisdiction.

requirements of diversity jurisdiction are not met. Although the federal courts have jurisdiction over an action between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants, *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983), such as an action between NIL and these alien defendants. Nike's presence as a plaintiff does not salvage jurisdiction because diversity must be complete. *See Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294 (9th Cir.1989) (presence of citizen defendant does not save jurisdiction as to alien defendant in action brought by alien plaintiff); *cf. Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1298–99 (9th Cir.1985) (pursuant to § 1332(a)(3) presence of aliens on both sides does not defeat diversity when citizens of United States on both sides who satisfy diversity requirements); 28 U.S.C. § 1332(a)(3) (diversity jurisdiction extends to actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties").

■ Moreover, if Nike had filed this suit as the sole plaintiff, it could not have relied on the district court's supplemental jurisdiction to add NIL and NIL's claims. Prior to the assignment, NIL was an indispensable party, *see Harrell & Sumner Contracting v. Peabody Peterson*, 546 F.2d 1227, 1229 (5th Cir.1977) (joint obligees are indispensable parties to action for enforcement of that obligation), whose presence, as we have just demonstrated, would have defeated diversity.[7] Supplemental jurisdiction cannot be used to create jurisdiction over an action that does not satisfy the requirements of the diversity statute. *See* 28 U.S.C. § 1367(b) (where original jurisdiction founded on diversity supplemental jurisdiction does not extend to claims "by persons proposed to be joined as plaintiffs under Rule 19 ... when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332"). Absent NIL's assignment to Nike, the federal courts lacked jurisdiction over this action.

## B

■ We may now proceed to determine whether the assignment was "collusive." In this circuit, we have concluded that "[c]ertain kinds of diversity-creating assignments warrant particularly close scrutiny." *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir.1992). We have treated assignments "by corporations to their officers or directors '[as] presumptively ineffective to create diversity jurisdiction,'" *id.* at 809–10; *see also Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989), and have generally stated that the same presumption applies to "[a]ssignments between parent companies and subsidiaries." *Yokeno*, 973 F.2d at 809–10 (citations omitted). In this action, for the first time, we apply these general statements to an assignment by a subsidiary to its parent corporation. Whichever direction the transfer occurs, "the close relationship between parent and subsidiary necessarily presents opportunities for the collusive manufacture of" commercial reasons for the assignment.[8] *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir.1976) (quoting *Green & White Constr. Co. v. Cormat Constr. Co.*, 361 F.Supp. 125, 128 (N.D.Ill.1973)). Moreover, "when a wholly-owned subsidiary assigns a claim to its parent, just as in the

---

7. Nike argues that *after* the assignment NIL was not an indispensable party. Here, however, we are considering NIL's status if it had not assigned its claims. The contracts upon which Nike sued were entered into between Cidesport and NIL. The signatories were representatives of Cidesport and NIL. The licensing agreement authorized defendants to use Spanish trademarks owned by NIL. NIL notified Cidesport of its intent to terminate the distribution and licensing agreements. Thus, it is clear that NIL was the principal party to the contracts. Nike may also have an interest in these contracts but that interest does not dilute the importance of NIL's role.

8. The circumstances of this assignment illustrate the impact of the close relationship between the parent and subsidiary. An individual who serves as Vice–President of Finance for both Nike and NIL signed the assignment on behalf of NIL and, while the transfer was allegedly "for good and valuable consideration," no one from Nike identified the nature or amount of the consideration.

reverse situation, the same set of stockholders running both corporate forms can transfer title to that claim freely between them. In each case the transferor, whether it is the parent or the subsidiary, realistically retains a substantial pecuniary interest in the outcome of the litigation which it assigns to the other." *Id.* at 475–76. We agree with the district court that this assignment triggers a presumption of collusion.

█ When testing this assignment, although the district court applied the presumption, it did not have the benefit of our decision in *Yokeno v. Mafnas,* 973 F.2d 803 (9th Cir.1992), which further explicates the implications of the presumption. There we stated that evidence of a jurisdictional motive for the assignment will heighten the presumption of collusion. *Yokeno,* 973 F.2d at 811. Simply showing a colorable or plausible business reason for the assignment will no longer suffice. *Id.* "The business reason must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum." *Id.*

This case compels application of the heightened presumption. In an affidavit explaining Nike's "excellent business reasons" for the assignment, Nike explained:

> Part of the reason NIKE, Inc. has included the Oregon choice of law and consent to jurisdiction in Oregon in contracts with distributors and licensees worldwide is that NIKE, Inc. is convinced *for good business reasons* that the expense of litigation in the Oregon Federal District Court is considerably less than the cost of litigation in other parts of the world, or, indeed, in other parts of the United States. The docket of the United States District Court for the District of Oregon is well managed, and cases come on for early trial when compared with other forums.

If we had any remaining doubts whether NIL and Nike acted at least in part to obtain a federal forum, the timing of the assign-ment, only three days before Nike filed the complaint in this action, dispels them.

█ Presented with this heightened presumption, we conclude that Nike has not advanced a "sufficiently compelling" business reason. As justification for the assignment, Nike maintains that it had an interest in the litigation before the assignment and therefore it made sense for it to assume control of all the claims.[9] Although a preexisting interest is a factor to consider, *see Yokeno,* 973 F.2d at 811, our primary inquiry is whether the assignment would have been made absent the purpose of obtaining a federal forum. For the answer in this case, we need look no further than the manner in which Nike has handled other litigation. Nike and NIL have filed a civil case against Cidesport in Spain alleging unlawful competition arising from Cidesport's use of a Spanish trademark. While Nike and NIL apparently have independent interests in the Spanish action, Nike has not taken an assignment of claims from NIL. The evidence not only fails to demonstrate that absent a desire to gain a federal forum Nike would have insisted on the assignment in this action, but it tends to refute Nike's position.

Nike's other proffered business reasons are equally dubious. It maintains that cost considerations compelled the assignment. During this litigation, Nike also argued, however, that NIL's principal place of business is Beaverton, Oregon, same as Nike, and we know that Nike and NIL share many corporate officers. Thus, we do not find any obvious cost savings from excluding NIL, an organization with officers located in Oregon despite its Bermuda incorporation and Spanish affiliations, and Nike does not explain why NIL's presence in the litigation would increase costs.

"Nor do we find the recital of consideration in the ... assignment, without more, sufficient to establish that business concerns were an independent reason for the assign-

---

9. Nike's reliance on *North Am. Watch v. Princess Ermine Jewels,* 786 F.2d 1447 (9th Cir.1986), is misplaced. In that case "there was simply no assignment." *North Am. Watch,* 786 F.2d at 1450.

ment." *Yokeno,* 973 F.2d at 811. In summary, Nike's business reasons merely justify its desire to litigate in a federal forum. Rather than rebutting the presumption of collusion, these reasons demonstrate its accuracy.[10]

The district court also found support for its exercise of jurisdiction in the complex nature of Nike's claims and their close relationship to the federal trademark laws. We do not agree that Nike's tort and contract claims are any different from the ordinary business litigation the federal anti-collusion statute is aimed at keeping out of the federal courts. *See Yokeno,* 973 F.2d at 809.

Because we conclude the district court did not have diversity jurisdiction, our jurisdiction is "not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed. 1263 (1936). Accordingly, we have no jurisdiction to interpret the agreements or their provision for attorney's fees.

The judgment of the district court, including its award of attorney's fees, is **VACATED.** The district court is directed to dismiss Nike's complaint.

---

**10.** The district court denied defendants' motion to dismiss for lack of jurisdiction. To defeat a motion to dismiss for lack of jurisdiction Nike was required to make a prima facie showing of facts to support the district court's exercise of jurisdiction. *See Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.,* 655 F.2d 938, 942 (9th Cir.1981). This action, however, proceeded to a default judgment and a limited hearing on the merits and on damages. The issue of jurisdiction was not revisited. We do not need to resolve Nike's burden of proof under the peculiar facts of these proceedings because we conclude that it failed to make its prima facie showing and the district court therefore erred in denying defendants' motion to dismiss.

