PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NATIONAL FITNESS HOLDINGS,
INC., a Wyoming corporation,

      Plaintiff - Appellant,

v.

GRAND VIEW CORPORATE
CENTRE, LLC, a Utah limited-liability
company; BAILEY N. HALL, an
individual,

      Defendants - Appellees.

No. 12-4215

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 1:12-CV-00189-TS)**

---

David K. Isom of Isom Law Firm PLLC, Salt Lake City, Utah, for Plaintiff – Appellant.

David L. Arrington of Durham Jones & Pinegar, Salt Lake City, Utah, and Jason M.
Yancey of Helgesen, Waterfall & Jones, P.C., Clearfield, Utah (Richard M. Hymas of
Durham Jones & Pinegar, Salt Lake City, Utah, with him on the brief), for Defendants-
Appellees.

---

Before **KELLY**, **HOLLOWAY**, and **PHILLIPS**, Circuit Judges.

---

**PHILLIPS**, Circuit Judge.

---

    In June 2012, the United States District Court for the District of Utah dismissed the

claims of J. Hoyt Stephenson—a man the district found to be a Utah citizen—for lack of

diversity jurisdiction. Less than three months later, Stephenson assigned his interests in various stock and real property to a new company of his creation, National Fitness Holdings, Inc.—a Wyoming corporation of which Stephenson is the sole director, officer, and shareholder. Only four days later, National Fitness sued Grand View Corporate Centre, LLC—a Utah company—in a familiar forum: the United States District Court for the District of Utah. The district court once again dismissed for lack of subject-matter jurisdiction, this time finding that Stephenson had impermissibly made the assignments to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. We must decide whether the district court clearly erred when it made that finding. We conclude that it did not because the district court's finding has ample support in the record, and we lack a definite and firm conviction that the district court erred. We therefore affirm the district court's judgment.

## FACTS

To understand this case, you need to know something about its companion, *Middleton v. Stephenson*, No. 12-4183 (10th Cir. Apr. 24, 2014). There, several Utah citizens sued J. Hoyt Stephenson in the United States District Court for the District of Utah. Stephenson fired back with state-law counterclaims and a third-party complaint asserting state-law claims against other Utah citizens. On June 14, 2012, the district court dismissed Stephenson's counterclaims and third-party claims. It found that Stephenson was a Utah citizen—not a Wyoming citizen—so it lacked diversity jurisdiction to hear Stephenson's

claims. Today, we affirm the district court's judgment on that front. *Middleton v. Stephenson*, No. 12-4183, slip op. at 2, 10 (10th Cir. Apr. 24, 2014).

On August 31, 2012—less than three months after receiving the district court's adverse ruling on diversity jurisdiction—Stephenson created National Fitness Holdings, Inc., a Wyoming corporation. Stephenson is National Fitness's sole director, officer, and shareholder.

On September 7—a week after creating National Fitness—Stephenson assigned to it all of his stock in three companies: National Financial Systems, Inc. (NFS); Metronomics, Inc.; and Thrive National Corporation (Thrive). He also assigned to National Fitness his interest in real property in Utah (the Grandview property). In exchange, Stephenson received all of National Fitness's stock.

On September 11—just 11 days after coming into existence and only 4 days after receiving the assignments—National Fitness sued Grand View Corporate Centre, LLC (a Utah company) in the United States District Court for the District of Utah. Of course, that's the same court that had dismissed Stephenson's counterclaims and third-party claims for lack of diversity jurisdiction less than three months earlier.

In its amended complaint, National Fitness added Bailey Hall (a Utah citizen) as a defendant and alleged that the district court had subject-matter jurisdiction based on diversity of the parties. National Fitness sought a declaratory judgment that it rightfully owned the NFS, Metronomics, and Thrive stock. It also sought a declaration quieting title to the Grandview property in National Fitness.

Defendants asked the district court to dismiss the case under Federal Rule of Civil Procedure 12(b)(1), arguing that Stephenson had improperly made the assignments to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. In response, National Fitness argued that Stephenson made the assignments merely to insulate himself from personal liability.

The district court sided with Defendants and granted their motion. It began by noting that Stephenson was a Utah citizen when National Fitness filed suit, meaning that, but for the assignments, the court's lack of subject-matter jurisdiction would have been obvious.[1] The district court then conducted a multifactor analysis and ultimately found that Stephenson had indeed impermissibly manufactured diversity jurisdiction under § 1359.

Having granted Defendants' motion to dismiss, the district court entered its final judgment. National Fitness appealed.

## DISCUSSION

Under 28 U.S.C. § 1359, whether an assignment was improperly made to manufacture diversity jurisdiction is a fact-intensive question that turns on the totality of the circumstances. Here, after considering those circumstances, the district court found that Stephenson had improperly made the assignments to National Fitness to manufacture

---

[1] For the reasons given in *Middleton*, we cannot say the district court clearly erred in finding Stephenson to be a Utah citizen when National Fitness filed suit—National Fitness's arguments to the contrary notwithstanding. *See Middleton v. Stephenson*, No. 12-4183, slip op. at 7–10 (10th Cir. Apr. 24, 2014)

diversity jurisdiction. We must decide whether the district court clearly erred when it made that finding. We conclude that it did not.

We begin with the text. Section 1359 says, "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. In other words, a person may not create diversity jurisdiction by "collusively assigning his interest in an action." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 745 (2014). One of the statute's principal goals is to prevent manufacturing federal jurisdiction via assignment. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829 (1969) ("Such manufacture of Federal jurisdiction was the very thing which Congress intended to prevent when it enacted [§] 1359." (internal quotation marks omitted)); *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 916 (10th Cir. 1993) (stating that § 1359 is "aimed at preventing parties from manufacturing diversity jurisdiction"), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

When considering whether a particular assignment was improperly made to manufacture diversity jurisdiction, a district court should consider the totality of the circumstances. 15 James Wm. Moore et al., *Moore's Federal Practice* § 102.19(4)(a) (3d ed. 2013). Some of those circumstances include the following:

- **Did the assignee lack a prior connection with the matter?** *See Kramer*, 394 U.S. at 827; *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995); *Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 871 (10th Cir. 1981).

- **Did the assignor select the assignee's attorney and pay the assignee's litigation expenses?** *See Cashman v. Amador & Sacramento Canal Co.*, 118 U.S. 58, 61 (1886).

- **Did the assignor retain control of the litigation?** *See id.*; *Farmington Vill. Corp. v. Pillsbury*, 114 U.S. 138, 146 (1885); 13F Charles Alan Wright et al., *Federal Practice and Procedure* § 3639, at 400, 408 (3d ed. 2009).

- **Did the assignee agree to pay the assignor a portion of any recovery?** *See Kramer*, 394 U.S. at 827; *Farmington Vill. Corp.*, 114 U.S. at 145–46; Wright et al., *supra*, § 3639, at 396.

- **Did the assignee provide meaningful consideration for the assignment?** *See Kramer*, 394 U.S. at 828; *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 327, 336 (1895); *Westinghouse Credit Corp.*, 645 F.2d at 871; *Bradbury v. Dennis*, 310 F.2d 73, 76 (10th Cir. 1962); Wright et al., *supra*, § 3639, at 396, 407.

- **Is the assignment's timing suspicious?** *See Airlines Reporting*, 58 F.3d at 863; *Westinghouse Credit Corp.*, 645 F.2d at 871.

- **Was the assignment motivated by a desire to create diversity jurisdiction?** *See Kramer*, 394 U.S. at 828; *Miller & Lux, Inc. v. E. Side Canal & Irrigation Co.*, 211 U.S. 293, 304–06 (1908); *Lehigh Mining*, 160 U.S. at 337, 339; *Westinghouse Credit Corp.*, 645 F.2d at 871; Wright et al., *supra*, § 3639, at 403, 419; Moore et al., *supra*, § 102.19(4)(a) ("[M]otive is a factor to be considered, but the mere presence of a motive to create diversity jurisdiction does not automatically bring an assignment within the ban of Section 1359.").

On appeal, our review of a district court's § 1359 finding is limited. True, we review the ultimate question of whether diversity jurisdiction exists de novo. *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1105 (10th Cir. 2005). But we review the district court's factual findings under the clear-error standard, and whether an assignment passes muster under § 1359 is a fact question subject to that deferential standard. *See Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1066–67 (7th Cir. 1992) (Posner, J.) ("The question whether an assignment is collusive, in the relevant sense of

being motivated by the assignor's desire to obtain access to a federal court under the diversity jurisdiction, is one of fact. Our review is therefore deferential." (citation omitted)); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) (reviewing a district court's finding that an assignment was improper for clear error); *McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968) ("Whether in an individual case diversity jurisdiction is 'manufactured' is, of course, a question of fact."). Under the clear-error standard, we may reverse only if the district court's finding lacks factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred. *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1263 (10th Cir. 2008).

That standard does all the heavy lifting here. There is ample support in the record for the district court's finding that Stephenson made the assignments to National Fitness to manufacture diversity jurisdiction. Reviewing the above factors proves as much.

*Prior Connection*. This factor supports the district court's finding. Before the assignment, National Fitness had no connection to the dispute over who owns the stock and the Grandview property. Indeed, National Fitness didn't even exist when that dispute arose.

*Attorney and Litigation Expenses*. This factor also supports the district court's finding. Because Stephenson is National Fitness's sole director, officer, and shareholder, the district court could reasonably infer that Stephenson selected National Fitness's attorney—an inference bolstered by the fact that the same attorney who represented Stephenson in the *Middleton* case now represents National Fitness in this case. Moreover, because National Fitness's only assets appear to be the assigned stock and the Grandview

property, the district court could reasonably infer that Stephenson is funding this litigation.

*Control of the Litigation.* This factor also favors the district court's finding. Because Stephenson is National Fitness's sole director, officer, and shareholder, the district court could reasonably infer that he's calling the shots in this case on National Fitness's behalf.

*Recovery.* This factor is a tougher call. On the one hand, the record doesn't show that National Fitness agreed to share any potential recovery with Stephenson, which helps National Fitness's cause. *Cf. Kramer*, 394 U.S. at 827 (noting that the assignee agreed to pay the assignor 95% of any net recovery). But on the other hand, we cannot shut our eyes to the reality that, should National Fitness prevail, nothing would prevent Stephenson from causing National Fitness to transfer the stock and the Grandview property back to himself. *See Lehigh Mining*, 160 U.S. at 337 (noting this concern in a similar case). Happily, we don't need to decide which side prevails on this factor because other factors adequately support the district court's finding.

*Meaningful Consideration.* We don't need to decide which side prevails on this factor either. National Fitness argues that it provided meaningful consideration for Stephenson's assignments by issuing all its stock to him. We have our doubts about that. Because Stephenson is National Fitness's sole director, officer, and shareholder, that transaction amounted to nothing more than Stephenson paying Stephenson. Does such an exchange count as *meaningful* consideration in any reasonable sense? We leave that question for another day because even spotting National Fitness this factor, other factors offer sufficient support for the district court's finding.

*Suspicious Timing*. This factor further supports the district court's finding. After Stephenson received the district court's adverse diversity-jurisdiction ruling in *Middleton*, he promptly incorporated National Fitness in Wyoming. He made the assignments a week later. Then, just four days after that, National Fitness sued in the United States District Court for the District of Utah—the same court that had dismissed Stephenson's claims for lack of diversity less than three months earlier. We can hardly fault the district court for raising an eyebrow at this sequence of events. *Cf. Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 992 (9th Cir. 1994) (emphasizing that the assignment occurred just three days before the assignee filed suit).

*Motive*. This factor supports the district court's finding as well. In the district court, Stephenson claimed that he made the assignments to protect himself from personal liability. Yet, based on the suspicious-timing factor, the district court found that claim incredible. And for our part, we can't say the district court's credibility determination was clearly erroneous. Moreover, National Fitness says in its brief that Stephenson created National Fitness and made the assignments, in part, because this dispute over the stock and the Grandview property was dragging on. That comes awfully close to an admission that Stephenson made the assignments, in part, to create diversity jurisdiction in hopes of receiving a quicker resolution in federal court. *Cf. Kramer*, 394 U.S. at 828 (attaching significance to the assignee's candid admission "that the assignment was in substantial part motivated by a desire . . . to make diversity jurisdiction available"); *Yokeno v. Mafnas*, 973 F.2d 803, 810 (9th Cir. 1992) (taking "particular note" of an assignee's

statement that "an alternate motive for the assignment was to gain a federal forum where he could obtain a speedier resolution" (internal quotation marks omitted)).

To sum up, the district court did not clearly err when it found that Stephenson improperly made the assignments to National Fitness to manufacture diversity jurisdiction. There is ample support in the record for that finding, and we lack a definite and firm conviction that the district court erred.

National Fitness's principal argument is that Stephenson's assignments didn't transgress § 1359's proscription because those assignments were "absolute." For its major premise, National Fitness points to a footnote in *Kramer v. Caribbean Mills, Inc.*, which states, "where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." 394 U.S. at 828 n.9. National Fitness says that this rule applies here because Stephenson transferred all of his interests in the stock and the Grandview property to National Fitness—i.e., the transfers were absolute.

We can't go along with Stephenson's minor premise. It's simply not true that Stephenson retains no interest in the subject matter of this litigation. Let's play this out. If National Fitness ultimately wins and is declared the rightful owner of the stock and the Grandview property, Stephenson will be the sole shareholder of a company with substantial assets, making Stephenson's shares quite valuable. But if National Fitness loses, it will have virtually no assets and Stephenson's shares will probably have little (if any) value. Simply put, by virtue of being National Fitness's sole shareholder, Stephenson has a lot riding on this case.

Defendants offer an alternative path to the conclusion we reach. They invite us to hold the following: If the sole, nondiverse director, officer, and shareholder of a diverse company assigns a claim to that company, then a rebuttable presumption of impropriety arises under § 1359, and the assignee rebuts the presumption only by producing evidence that the assignment served a legitimate business purpose unconnected with creating diversity jurisdiction. Here, Defendants tell us, National Fitness failed to rebut this presumption, so they win.

We elect to leave Defendants' proposed rule to a future panel and a future case. We make that election for two reasons. First, Defendants prevail even without the benefit of this presumption, so their proposed rule isn't necessary to our disposition. *See Shamloo v. Miss. State Bd. of Trs. of Insts. of Higher Learning*, 620 F.2d 516, 524 (5th Cir. 1980) ("[C]ases are to be decided on the narrowest legal grounds available."). Second, were we to adopt Defendants' proposal, we'd be wading into a circuit split,[2] and we'd rather not venture into the fray unless we have to.

---

[2] *Compare McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004) (holding that an assignment between a corporation and its sole shareholder triggers a presumption of impropriety), *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995) (holding that an assignment between entities with "close ties" triggers a presumption of impropriety), *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) (holding that an assignment by a subsidiary to its parent triggers a presumption of impropriety), *Yokeno v. Mafnas*, 973 F.2d 803, 809–10 (9th Cir. 1992) (stating that "assignments by corporations to their officers or directors are presumptively ineffective to create diversity jurisdiction" (internal quotation marks omitted)), *and Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976) (holding that where a nondiverse parent corporation assigns a claim to its wholly owned, diverse subsidiary engaged in no other business than prosecuting the claim, the assignment is presumptively improper), *with Ambrosia Coal & Constr. Co. v. Pages*

CONCLUSION

The district court did not clearly err in finding that Stephenson made the assignments to National Fitness to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359. Accordingly, the district court properly dismissed the case for lack of subject-matter jurisdiction. We affirm the district court's judgment.

---

*Morales*, 482 F.3d 1309, 1314 (11th Cir. 2007) (rejecting presumption of impropriety when a subsidiary assigns a claim to its parent), *and Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1067 (7th Cir. 1992) (Posner, J.) (same).