**WESTERN FARM CREDIT BANK, a federal corporation, Plaintiff,**

v.

**HAMAKUA SUGAR COMPANY, INC., et al., Defendants.**

**Civ. No. 93–00318 ACK.**

United States District Court, D. Hawaii.

Jan. 13, 1994.

Paul A. Schraff, Ronald V. Grant, Tracy Timothy Woo, Dwyer Imanaka Schraff Kudo Meyer & Fujimoto, Honolulu, HI, for plaintiff.

Christopher J. Yuen, Hilo, HI, for defendants Arthur Herbst, Jr. and Thomas Bearden.

David J. Dezzani, Randall K. Steverson, Corlis J. Chang, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for defendant Theo. H. Davies & Co., Ltd.

Walter R. Schoettle, pro se.

Steven B. Jacobson, Torkildson Katz Jossem Fonseca Jaffe Moore & Hetherington, Honolulu, HI, for defendants John H. Hewetson and Nancy L. Hewetson.

Michael J. Matsukawa, Kailua–Kona, HI, for defendant Paauhau Protestant Church.

Robert B. Bunn, Nicholas C. Dreher, Cades Schutte Fleming & Wright, Honolulu, HI, for defendants Francis S. Morgan, Margot A. Morgan, Kualoa Ranch, Inc., and Hawaiian Irrigation Co.

Robert J.K. Garcia, Kamuela, HI, for defendant Louis Nobriga.

Terence T. Yoshioka, Jerel I. Yamamoto, Henry T. Nakamoto, Nakamoto Yoshioka & Okamoto, Hilo, HI, for defendants Takeshi Hagiwara, Trustee for the Takeshi Hagiwara Revocable Living Trust, Hisako Hagiwara, Trustee for the Hisako Hagiwara Revocable Living Trust, Robert Tanoue, Earl Saito, dba Paauilo Store, Emiko Maile Chong, Robert M. Yamada, and Yamada Enterprises, Inc.

Edward L. Britton, III, pro se.

Richard D. Wurdeman, Corp. Counsel, Anson K. Lee, Deputy Corp. Counsel, Hilo, HI, for defendant County of Hawaii.

Jerry M. Hiatt, Carl H. Osaki, Bays Deaver Hiatt Kawachika & Lezak, Kamuela, HI, for defendants Robert Impson, dba Last Chance Store, Honokaa Odaishi Shingon Mission, aka Kinpukuji Mission, Pablo Ignacio, Ligaya Ignacio, Errol H. Imada, Ayako Imada, Ambrocio Mamuad, Clevenan Mamuad, Florencio Visaya, Kiyoshi Oshiro, Mildred Oshiro, James Ishiki, Satornina Ishiki, Chiyono Komenaga, Elaine Charters, Mason Oshiro, Maria R. Yano, and Luis Manarpaac.

Steven L. Wolf, pro se.

Mariam and Arshad Igbal, pro se.

Tamotsu Tanaka, Eric H. Tsugawa, Tanaka & Tsugawa, Honolulu, HI, for defendant Pheasant Ridge Corp.

James A. Wagner, James F. Evers, Wagner & Watson, Honolulu, HI, for defendant John Goss, Trustee of defendant Hamakua Sugar Co., Inc.

Terry and Diana Tusher, pro se.

Philip L. Lahne, Dinman Nakamura Elisha & Lahne, Honolulu, HI, for Otto Lehrack and Karen Lehrack.

Robert A. Marks, Atty. Gen., Ted Gamble Clause, James C. Paige, Deputy Attys. Gen., Dept. of Atty. Gen., State of HI, Honolulu, HI, and Don Jeffrey Gelber, Simon Klevansky, Robert J. Faris, Gelber Gelber Ingersoll & Klevansky, Honolulu, HI, for defendant State of HI.

Steven A. Kornberg, James C. Clay, Kailua–Kona, HI, for Joseph Sciortino, Jr., Jana Fowler, Mark D. Farrin and Alison A. Farrin.

Martin Anderson, Honolulu, HI, for defendants David Larsen, Shirley Larsen, Viking Properties, Inc., Kapoho Properties, Inc. and First Hawaiian Bank.

Gordon Nelson, Honolulu, HI, for defendant Bank of Hawaii.

Terrance R. Shumaker, Honokaa, HI, for defendants Fred Kozy, Shirley Kozy and Mauna Kea Water Users Associates, Inc.

Thomas L.H. Yeh, Menezes Tsukazaki Yeh & Moore, Hilo, HI, for Virginio C. Aguiar, Jr. and Miriam Aguiar.

Michael Buxton, pro se.

Robert M. Dunn, pro se.

Lawrence A. Heim, pro se.

Rebecca Pohaku Kearns, pro se.

## ORDER DENYING MOTION TO DISMISS FOR LACK OF DIVERSITY

KAY, Chief Judge.

### BACKGROUND

On April 13, 1993, Plaintiff Western Farm Credit Bank ("Western Farm") filed this action to foreclose on certain loans upon which Defendant Hamakua Sugar Company ("Hamakua") defaulted. Defendant Theo. H. Davies & Co., Ltd. ("Davies") now moves this Court to dismiss the action for lack of subject matter jurisdiction. Davies contends that no diversity exists under 28 U.S.C. §§ 1332, 1359 because diversity was created by a collusive assignment between Western Farm and Hawaii Production Credit Association ("HPCA"). Several other defendants have joined in Davies' motion to dismiss.[1] Western Farm opposes the motion, submitting evidence to show that the assignment between it and HPCA was not entered into to collusively create diversity jurisdiction.

Davies also moves to dismiss for Western Farm's alleged failure to join HPCA as an indispensable party. Davies argues that Western Farm's failure to register the assignment with the Land Court means that HPCA is still a mortgage creditor who must be joined as a plaintiff. As Western Farm has submitted evidence showing the assignment was properly registered with the Land Court, Davies argument is moot and the Court need not address its merits.

For the reasons stated below, this Court DENIES the motion to dismiss.

1. These defendants include: Pheasant Ridge Corporation; County of Hawaii; Viking Properties, Inc.; Successor–Trustee for Yamanaka Enterprise, Inc.; Kapoho Properties, Inc.; David Larsen; Shirley Larsen; and Martin Anderson.

## FACTS

### Background Regarding Western Farm and HPCA

Western Farm and HPCA are federal instrumentalities organized and operated under the Farm Credit Act of 1971, 12 U.S.C. § 2001 et seq. Both entities are regulated by the Farm Credit Administration ("FCA"). Both are borrower-owned cooperatives whose primary purpose is to provide financing to farmers. Western Farm makes long term loans to farmers through agents, while HPCA makes short term loans directly to farmers. Under the Farm Credit Act, Western Farm makes funds available to HPCA through a Direct Loan, which is a line of credit evidenced by a note and governed by an agreement between the entities. HPCA then uses the funds to make loans to farmers.

### Close Relationship Between Western Farm and HPCA

Davies submitted evidence of the close relationship between Western Farm and HPCA. While Western Farm asserts that the entities are not in a parent-subsidiary relationship, it does not bring any evidence which controverts Davies' evidence of the entities' close affiliation. Davies' evidence details the following:

HPCA is required to own stock in Western Farm[2] and Western Farm is responsible for supervising the activities of HPCA. Western Farm has final decision-making authority on HPCA loans in excess of $1 million. HPCA obtains its funding from Western Farm and substantially all of HPCA's assets are pledged to Western Farm as security for its loans from Western Farm. HPCA's liquidity and ability to remain in business depends on Western Farm's funding. For example, in 1992, Western Farm's loan to HPCA of about $13.7 million represented about 97% of HPCA's total liabilities.

### The Assignment of HPCA's Hamakua Loans to Western Farm

To dispute Davies' allegations of collusion, Western Farm put forth affidavit testimony and documentary evidence. Davies did not controvert this evidence. Western Farm's evidence depicts the following:

In January 1984, a predecessor in interest to Western Farm made a $61 million mortgage loan ("Hamakua Mortgage Loan") to Hamakua to fund the purchase of a sugar plantation from Davies. Between September 1987 and March 1992, HPCA made four loans totalling about $38.7 million ("Hamakua Commercial Loans") to Hamakua. Through a 1987 agreement between Western Farm and HPCA, Western Farm was to service the Hamakua Commercial Loans and had a 95% interest in these loans. In 1988, as symbolized in a 1989 agreement between Western Farm and HPCA, Western Farm's interest in the Hamakua Commercial Loans increased to 98.5%.

In 1987, Hamakua defaulted on the Hamakua Mortgage and Commercial loans. As a result, FCA required Western Farm and HPCA to put the loans on nonaccrual status, which meant that neither Western Farm nor HPCA could accrue interest on the loans. The FCA also required Western Farm to put its Direct Loan to HPCA on nonaccrual status, which meant that Western Farm could not accrue interest on the Direct Loan.

HPCA's inability to accrue interest on the Hamakua Commercial Loans greatly threatened its financial viability. Western Farm's by-laws required HPCA to finance Western Farm's participation interest in the Hamakua Commercial Loans by purchasing $1.1 million of stock in Western Farm. As the $1.1 million stock purchase was financed through the Direct Loan, HPCA had to pay about $80,000 a year in interest, which approximated one-half of HPCA's 1991 net income. These payments threatened HPCA's financial viability, as HPCA was not earning any offsetting interest on the Hamakua Commercial Loans.

In addition, the FCA issued a Cease and Desist Order imposing onerous accounting, review, reporting and certification requirements on HPCA. As Western Farm, not

---

2. HPCA owns .65% of Western Farm's stock. Given this low percentage, HPCA and Western Farm are not in a parent-subsidiary relationship.

HPCA, serviced the Hamakua Commercial Loans, HPCA could not comply with the order without great difficulty.

Before it would return the loans to accrual status, the FCA required Western Farm to develop a plan of collection for the loans. Western Farm developed the required plan, which included an assignment of all of HPCA's interest in the Hamakua Commercial Loans to Western Farm. With the completion of such a plan, Western Farm would be able to accrue interest on all the loans[3] and HPCA would be relieved of the need to finance Western Farm's participation in the Hamakua Commercial Loans and of the need to comply with the Cease and Desist Order. HPCA's financial viability would be restored by not being required to finance Western Farm's participation.

In October 1991, Western Farm and HPCA agreed to enter into the assignment. This assignment, however, was not finalized until March 23, 1993 through an agreement between the entities because of the regulatory concerns raised by the FCA and the complication of Hamakua's bankruptcy action. The FCA was concerned that the assignment would not ensure HPCA's financial viability and that the payment of $2.48 million to HPCA for the 1.5% interest was too much. Hamakua's bankruptcy further delayed matters because Western Farm feared that public disclosure of the assignment would prejudice its settlement negotiations with Hamakua.

Western Farm and HPCA structured the assignment agreement with Western Farm's fear in mind. Under the agreement, on February 1, 1993, Western Farm paid the $2.48 million to HPCA for almost all of HPCA's 1.5% interest in the Hamakua Commercial Loans. HPCA retained a nominal interest. When Western Farm settled the Hamakua bankruptcy matter, Western Farm would pay HPCA $1.00 for its remaining nominal interest. Western Farm entered into a settlement with Hamakua, but the bankruptcy court did not approve it. Given the posture of the bankruptcy matter, Western Farm believed it could not delay foreclosing on its mortgages. Western Farm therefore exercised its right to purchase HPCA's remaining nominal interest. It did so pursuant to an agreement dated April 12, 1993. Western Farm filed this foreclosure action on April 13, 1993 and recorded its UCC–2 filing of the assignment on April 14, 1993.

## DISCUSSION

### I. MOTION TO DISMISS FOR LACK OF DIVERSITY JURISDICTION

#### A. Standard of Review

Davies seeks to dismiss Western Farm's action for lack of subject matter jurisdiction, claiming that complete diversity jurisdiction is not present due to the allegedly collusive assignment between Western Farm and HPCA.

Fed.R.Civ.P. 12(b)(1) allows a party to challenge the complaint on a motion to dismiss for "lack of jurisdiction over the subject matter." When considering a motion to dismiss under Rule 12(b)(1), the district court is not restricted to the pleadings, but may review any evidence outside the pleadings to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir. 1983).

Title 28 U.S.C. § 1332(a) empowers district courts with original subject matter jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $50,000 ... and is between ... citizens of different States." District courts have no such jurisdiction, however, when the conditions of 28 U.S.C. § 1359 are met. Under section 1359, district courts "shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke [federal] jurisdiction."

---

**3.** On page 12 of its opposition, Western Farm states that, as a result of the assignment, it anticipates that, in the next few weeks, the FCA will permit it to return the direct loan to accrual status, which will allow it to recognize $1.4 million in interest income.

Section 1359 prevents parties from creating diversity jurisdiction by the use of improper or collusive assignments. *Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir.1989). As the Ninth Circuit stated in *Yokeno v. Mafnas*, section 1359 "is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts." 973 F.2d 803, 809 (9th Cir.1992) (citing *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490–91, 23 L.Ed.2d 9 (1969)).

■ It should be noted, however, that section 1359 does not prohibit the creation of diversity by bona fide assignment. 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3639 at 107 (1985). Section 1359 only prohibits "improper or collusive" assignments, that is, assignments of claims in which the assignee possesses no real personal interest in the outcome of the litigation so that the transfer of the claim is a sham. *Id.*

■ When the issue of a collusive assignment is raised, the party asserting diversity has the burden of showing the non-collusive nature of the assignment. *R.C. Hedreen Co. v. Crow Tribal Housing Authority*, 521 F.Supp. 599, 607 (D.Mont.1981), *criticized on other grounds, R.J. Williams Co. v. Fort Belknap Housing Auth.*, 719 F.2d 979, 985 (9th Cir.1983), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Dweck*, 877 F.2d at 792. The assignee-plaintiff may generally meet his or her burden by merely offering "evidence that the transfer was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction." *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir.1976); *see also Mother Bertha Music Inc. v. Trio Music Co.*, 717 F.Supp. 157, 160 (S.D.N.Y.1989) (assignment of claim to newly formed California corporation found not collusive where plaintiff alleged transaction was part of "overall business reorganization").

■ If a party puts forth a legitimate business purpose, the assignment will not be rendered ineffective for diversity jurisdiction even when the assignment was partially mo-

tivated by the desire to create diversity. *Yokeno*, 973 F.2d at 811 (citing *U.S.I. Properties Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 6 (1st Cir.1988), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989)); *Hedreen*, 521 F.Supp. at 607. Further, if "the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." *Kramer*, 394 U.S. at 828 n. 9, 89 S.Ct. at 1490 n. 9. Thus, in general, once a party has stated a legitimate business purpose for the assignment and has shown the assignment is absolute, district courts need not explore whether one motivating factor behind the assignment was to create diversity jurisdiction. *Hedreen*, 521 F.Supp. at 607.

■ Nevertheless, certain diversity-created assignments warrant heightened scrutiny by the district courts. *Yokeno*, 973 F.2d at 809 ("Certain kinds of diversity-created assignments warrant particularly close scrutiny.") Heightened scrutiny applies to assignments between parent companies and subsidiaries, and assignments by corporations to their officers or directors. *See id.* at 809–10. The Ninth Circuit has not decided whether heightened scrutiny applies to other closely affiliated assignees and assignors.

With heightened scrutiny, assignments between parent companies and subsidiaries, and assignments by corporations to their officers or directors " 'are presumptively ineffective to create diversity jurisdiction.' " *Id.* at 809–10 (quoting *Dweck*, 877 F.2d at 792; citing *Prudential Oil Corp.*, 546 F.2d at 475). To overcome this presumption, the party asserting diversity must show a legitimate business reason for the assignment. *Yokeno*, 973 F.2d at 810. "Simply articulating a business reason is insufficient; the burden of proof is with the party asserting diversity to establish that the reason is legitimate and not pretextual." *Id.* Thus, inquiring into the underlying motivation for the assignment even after the assignee sets forth a business purpose, while inappropriate under ordinary scrutiny, is required under heightened scrutiny. *Id.* at 810–11.

Under the heightened scrutiny standards, district courts must evaluate the assignment in light of the totality of the circumstances and should examine several factors to determine whether the business reason is legitimate and not pretextual. *See Yokeno*, 973 F.2d at 810. These factors include: (1) whether and to what extent the assignee has a preexisting financial interest, (2) whether adequate consideration exchanged hands, (3) whether the underlying motivation of the assignment involved a sufficiently compelling business purpose that the assignment would have been made absent the purpose of gaining a federal forum, (4) whether the timing of the assignment supports an inference that the assignment was not entered into to create diversity, (5) whether the assignor has transferred all interest in the litigation, and (6) whether the assignee is financing the litigation. *Id.* at 810–12.

## B. *The Merits*

### 1. *Heightened scrutiny*

Neither party claims that the entities are in a parent-subsidiary relationship or that either entity is a corporate officer of the other entity. Given that HPCA owns only .65% of Western Farm's stock, this Court finds that such a relationship is not present here. Nevertheless, Davies points to facts indicating a close affiliation between the entities: (1) Western Farm has final decision-making authority on HPCA loans in excess of $1 million; (2) HPCA obtains its funding from Western Farm and substantially all of HPCA's assets are pledged to Western Farm; and (3) HPCA's liquidity and ability to remain in business depends on Western Farm's funding.

The closeness of the relationship between Western Farm and HPCA serves to increase the possibility of collusion between them and to compound the difficulty encountered in detecting the real purpose of the assignment. For this reason, the Court will apply heightened scrutiny when examining the assignment at issue here. The Court's holding is supported by *Prudential Oil Corporation*. In *Prudential Oil Corporation*, the Second Circuit established heightened scrutiny of assignments between parents and their subsidiaries because of the ease with which such entities could collusively create diversity by assignment, stating:

> The scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated corporations since common ownership or the control of one of the other only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose.

546 F.2d at 475.

The Court further addresses the alleged collusiveness of the assignment under heightened scrutiny because, if Western Farm is able to meet its burden under this standard, the Court need not address the separate inquiry of whether Western Farm has met its burden under ordinary scrutiny. Any holding by this Court that Western Farm has met its burden under heightened scrutiny will necessarily include a finding that Western Farm satisfied ordinary scrutiny, as this standard is the easier of the two to meet.

### 2. *Totality of the circumstances*

Given the totality of the circumstances of the assignment between Western Farm and HPCA, this Court finds Western Farm has rebutted the presumption that the assignment was entered into to collusively create diversity jurisdiction. The Court now discusses this holding in light of the factors established in *Yokeno*.

#### a. *Preexisting financial interest*

Evidence of a significant preexisting financial interest held by the assignee will assist the assignee in rebutting the presumption of collusion. *See Yokeno*, 973 F.2d at 810, 811.

In *Yokeno*, the Ninth Circuit directed the district court on remand to consider whether a 5% preexisting financial interest adequately established "the type of independent, preexisting interest indicative of a valid assignment." *Id.* at 811. In contrast, the assignee-plaintiff in *Dweck* failed to prove *any* preexisting interest. 877 F.2d at 791–92. In *Kramer*, the plaintiff also failed to establish a

preexisting interest. 394 U.S. at 824, 89 S.Ct. at 1488.

In the case at bar, Western Farm has submitted evidence indicating it had a 95% interest in the Hamakua Commercial Loans until 1988, and, starting in 1988, that interest increased to 98.5%. Davies submits no evidence or argumentation refuting the evidence offered by Western Farm. Hence, based on *Yokeno, Dweck,* and *Kramer,* and based on Western Farm's evidence, this Court finds that Western Farm's evidence shows that it had a significant preexisting interest in the Hamakua Commercial Loans. Thus, Western Farm prevails on the preexisting financial interest factor.

### b. *Consideration*

Evidence of adequate consideration which was actually exchanged between the assignee and assignor will assist the assignee in rebutting the presumption of collusion. *See Yokeno,* 973 F.2d at 810, 811. In cases where a presumption of collusion exists, a recitation of consideration is insufficient to overcome the presumption. *Id.* at 811. District courts must inquire into the adequacy of the consideration and whether the consideration actually exchanged hands. *Id.*

In *Yokeno,* the plaintiff provided no proof that consideration exchanged hands. *Id.* at 811. The Ninth Circuit directed the district court on remand to inquire whether the consideration was adequate and whether it actually changed hands. *Id.* In *Kramer,* the assignee only gave $1.00 for a $165,000 claim, and, as a result, the Supreme Court held the assignment was collusive. 394 U.S. at 827–28, 89 S.Ct. at 1489. In *Dweck,* the Ninth Circuit stated "the assignment was not supported by consideration" and held it to be collusive. 877 F.2d at 793. In contrast, the assignee in *Nobel v. Morchesky* paid $400,000 for the assignment and the Third Circuit held that the assignment did not collusively create diversity jurisdiction. 697 F.2d 97, 101–02 (3rd Cir.1982).

Here, plaintiff submits affidavit testimony evidencing that Western Farm paid $2.48 million for HPCA's assignment of its 1.5% interest in the Hamakua Commercial Loans. Davies does not submit any evidence contro-verting Western Farm's proffered fact that the $2.48 million actually exchanged hands. Furthermore, Davies does not argue that the $2.48 million was inadequate consideration for HPCA's assignment. Thus, based on the above cited cases, this Court finds that Western Farm and HPCA exchanged adequate consideration for the assignment, and therefore Western Farm prevails on the consideration factor.

### c. *Underlying motivation*

In cases where a presumption does not exist, the dual motives of effectuating a business purpose and creating diversity would not render the assignment ineffective for diversity purposes. *Yokeno,* 973 F.2d at 811. When a presumption exists, however, the party asserting diversity must show more than a colorable or plausible business reason. *Id.* The party must show a business reason which is sufficiently compelling to motivate the assignment, even in the absence of gaining access to the federal forum. *Id.* Thus, as to the factor of the underlying motivation of the assignment, evidence of such a sufficiently compelling business purpose is necessary if the assignee is to rebut the presumption of collusion. *See Yokeno,* 973 F.2d at 810, 811.

Western Farm asserts that it would have entered into the assignment even if the assignment did not result in diversity because the assignment was necessary to restore HPCA's financial viability. Furthermore, the assignment was necessary to return Western Farm's Direct Loan to HPCA to accrual status whereby Western Farm was accruing interest on the loans to HPCA.

Western Farm's uncontroverted affidavit testimony and documentary evidence amply support this assertion. HPCA was paying half of its net income, $80,000 a year, to finance Western Farm's participation in the Hamakua Commercial Loans. When the Hamakua Mortgage and Commercial Loans went on nonaccrual status, HPCA was not able to offset these payments by the interest on the Hamakua Commercial Loans. In addition, the FCA's Cease and Desist Order imposed accounting obligations on HPCA

which it could only meet with great difficulty, as Western Farm was servicing the loans. The assignment relieved HPCA of its financial and accounting burdens, and facilitated Western Farm's ability to accrue interest on the Hamakua Mortgage and Commercial Loans and its Direct Loan to HPCA.

Given the above, this Court finds that the evidence submitted by Western Farm shows that Western Farm and HPCA would have entered into the assignment even if diversity jurisdiction was not created by the assignment in order to restore HPCA's financial viability and to return all the loans to Hamakua to accrual status. Consequently, as to the underlying motivation factor, Western Farm prevails.

#### d. *Continuing interest*

Evidence that the assignor has transferred all interest in the litigation to the assignee will assist the assignee in rebutting the presumption. *See Yokeno,* 973 F.2d at 811.

In *Kramer,* the Supreme Court found the assignment collusive, as the assignors retained a 95% interest in the proceeds of the litigation. 394 U.S. at 827–28, 89 S.Ct. at 1489–90. In *Yokeno,* the Ninth Circuit found support for a presumption of collusiveness in the fact that the assignee conceded he was free to reassign the property at issue there once the litigation was complete. 973 F.2d at 811. Contrarily, in *Nobel,* the Third Circuit found the assignment was not collusive because the plaintiff "maintain[ed] no ownership interest in the partnership" which was the subject of the assignment. 697 F.2d at 102.

In the instant action, the documentary evidence submitted by Western Farm shows that HPCA conveyed its entire interest in the Hamakua Commercial Loans to Western Farm. The affidavit testimony of Eric Kaneshiro, HPCA's president, disavows any continuing interest in the loans. Davies submits no controverting evidence and therefore this Court finds that Western Farm prevails on the continuing interest factor.

#### e. *Timing*

Evidence that the timing of the assignment supports an inference that the assignment

was not entered into to create diversity will assist the assignee in rebutting the presumption of collusion. *See Yokeno,* 973 F.2d at 810, 811.

When an assignment is entered into shortly before a diversity action is brought, an inference that the assignment was entered into for the purposes of creating diversity arises. *See Yokeno,* 973 F.2d at 810; *Kramer,* 394 U.S. at 824, 89 S.Ct. at 1488. Close temporal proximity of an assignment to a suit, however, is not conclusive proof of collusion or impropriety. In *Herzog Contracting Corporation v. McGowen Corporation,* the plaintiff's suit on the promissory notes was brought shortly after they were assigned. 976 F.2d 1062, 1066 (7th Cir.1992). The Seventh Circuit nevertheless upheld the district court's finding of no collusion because, while "the timing of the assignment in relation to the parties' dispute and to [the] lawsuit, [emitted] the odor of collusion," the district court was not required—and perhaps not permitted—to disregard plaintiff's affidavit testimony showing that consideration had been paid and that the assignment was entered into for a business purpose, especially since the defendant submitted no controverting evidence. *Id.*

As discussed above, Western Farm has put forth evidence showing that it had a significant preexisting financial interest, that it had a legitimate business purpose for the assignment, that it actually paid adequate consideration for the assignment, and that HPCA has no continuing interest in this litigation. Thus, as in *Herzog,* even if the timing of the assignment "emits an odor of collusion," this Court finds Western Farm has submitted sufficient evidence to overcome an inference of collusion. Furthermore, this Court holds that the timing of the assignment here does not support a finding of collusion.

Western Farm submitted affidavit testimony evincing that Western Farm and HPCA planned the assignment long before it intended to file this foreclosure action. Hamakua's bankruptcy action, however, delayed execution of the assignment. Fearing the public disclosure of the assignment would endanger settlement with Hamakua, Western Farm and HPCA structured the assignment agree-

ment so that Western Farm would pay the $2.48 million to HPCA for almost all of HPCA's 1.5% interest and HPCA would retain a nominal interest. When Western Farm settled the Hamakua bankruptcy matter, Western Farm would pay HPCA $1.00 for its remaining nominal interest.

Western Farm paid the $2.48 million pursuant to a February 1, 1993 agreement. Although Western Farm entered into a settlement with Hamakua, the bankruptcy court did not approve it. Given the posture of the bankruptcy matter, Western Farm believed it could not delay foreclosure and therefore, on April 12, 1993, it exercised its right to purchase HPCA's remaining nominal interest. Western Farm filed this foreclosure action on April 13, 1993 and recorded its UCC-2 filing of the assignment on April 14, 1993.

Davies submits no evidence controverting Western Farm's version of the timing of events. Thus, given Western Farm's evidence regarding the delay resulting from Hamakua's bankruptcy, this Court finds that the timing here does not support an inference of collusion. Western Farm therefore prevails on the timing factor.

### f. *Financing of the litigation*

Evidence that the assignee is financing the litigation will assist the assignee in rebutting the presumption of collusion. *See Yokeno,* 973 F.2d at 810 (citing *Haskin v. Corporacion Insular de Seguros,* 666 F.Supp. 349, 354–56 (D.P.R.1987)). The affidavit testimony submitted by Western Farm establishes that it alone is funding this litigation. Davies does not controvert this evidence. Thus, Western Farm prevails on this factor.

### g. *Factors considered in their totality*

As discussed above, Western Farm has prevailed in favorably establishing all the *Yokeno* factors, including the factor of underlying motivation for the assignment. The Court notes that establishing the underlying motivation of legitimate business purposes weighs heavily in Western Farm's favor, as this is the most important of the six *Yokeno* factors. Hence, this Court holds that, under the totality of the circumstances test, West-

ern Farm has rebutted the presumption that the assignment was entered into to collusively create diversity jurisdiction. For this reason, the Court DENIES Davies' motion to dismiss for lack of diversity jurisdiction.

## II. *MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY*

Davies alternatively moves to dismiss the complaint on the basis that Western Farm has failed to join an indispensable party. Davies' argument is as follows: Haw.Rev. Stat. § 667–2 provides that all mortgage creditors whose names can be discovered shall be made parties to a foreclosure action. Under Haw.Rev.Stat. § 501–116, HPCA is a mortgage creditor until the assignment between HPCA and Western Farm is registered with the Land Court. Because the assignment has never been registered, HPCA is a mortgage creditor who must be joined in this action under section 667–2. HPCA must be aligned as a plaintiff and not a defendant because HPCA's ultimate interest is the same as Western Farm, the plaintiff. Because HPCA must be joined as a plaintiff, diversity would be destroyed and the complaint must be dismissed.

In its opposition, Western Farm argues that the assignment was registered with the Land Court on September 28, 1993. As evidence, Western Farm submits a copy of the document registering the assignment with the Land Court, entitled "Assignment of Mortgage and Amendment." Western Farm maintains, and the Assignment of Mortgage and Amendment evidences, that Western Farm did not file the document earlier because the original assignment omitted certain information required for the Land Court filing and therefore was rejected. The Land Court accepted the document once it was corrected.

Davies does not controvert Western Farm's evidence. Thus, as Western Farm has made the proper Land Court filing, Davies' argument is moot, and the Court need not consider its merits.

## CONCLUSION

For the foregoing reasons, this Court DE-NIES Davies' motion to dismiss for lack of diversity jurisdiction and its motion to dismiss for failure to join an indispensable party. IT IS SO ORDERED.