**AIRLINES REPORTING CORPORATION,**
Plaintiff,

v.

**S AND N TRAVEL, INC., d/b/a Superior Travel, Ephraim Schwartz, and Walter Newmark, Defendants.**

No. CV 93–0396 (JBW).

United States District Court,
E.D. New York.

July 26, 1994.

Jones, Day, Reavis & Pogue, New York City by Harold K. Gordon, Jones, Day, Reavis & Pogue, Washington, DC by Thomas F. Cullen, Jr., Kathryn M. Fenton, for plaintiff Airlines Reporting Corp.

Lichtenberg & Gross, P.C., New York City by Murray Lichtenberg, Roberts & Hundermark, Chevy Chase, MD by Barry Roberts, for defendants S and N Travel, d/b/a Superior Travel, Ephraim Schwartz, and Walter Newmark.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Defendants move to dismiss for lack of subject matter jurisdiction on the grounds that diversity of citizenship is lacking and that the amount in controversy does not exceed $50,000. The motion must be granted. Airlines Reporting Corporation ("ARC") was not the real party in interest until assignments were collusively made for the purpose of obtaining federal jurisdiction in violation of 28 U.S.C. § 1359. The citizenship of the assignors of the claims will be considered for the purpose of determining diversity of citizenship. In addition, the claims cannot be aggregated for the purpose of determining the amount in controversy.

The result is unfortunate since ARC serves a useful purpose in reducing litigation costs and in facilitating a sound relationship between travel agencies and airlines in the public interest. Restructuring of ARC's operations or legislation to permit the kind of representative suit brought here might be useful, but such changes are beyond the court's power.

## I. *Facts*

ARC is a Delaware, not-for-profit corporation with its principal place of business in Arlington, Virginia. It was organized in 1984 by members of the Air Transport Association of America, the trade association of domestic air carriers, to act as a clearinghouse and collection agent for transactions between air carriers and travel agents who issue airline tickets. Its shareholders are major domestic air carriers. One hundred and forty three domestic air carriers have entered into a "Carrier Services Agreement" with ARC granting ARC the power of attorney to enter into contracts with travel agents on behalf of the carriers. Pursuant to that power, ARC enters into "Agent Reporting Agreements" with travel agents on behalf of the air carriers.

As part of its role as an intermediary between the airlines and travel agents, ARC distributes standard ticket stock, performs credit checks on travel agents, and administers a claims procedure; agents remit to ARC money owed to the carriers for airline tickets issued by the agents. The Carrier Services Agreement gives ARC the power of attorney to collect money owed to the carriers by the travel agents and to pursue joint legal action against a travel agent on behalf of the carriers as part of the collection process.

Defendant S and N Travel ("S & N") is a New York corporation with its principal place of business in New York. Defendants Ephraim Schwartz and Walter Newmark are both New York residents.

On October 16, 1989, ARC entered into an Agent Reporting Agreement with S & N. ARC and S & N are the sole signatories to the agreement. The Agent Reporting Agreement, however, explicitly states that ARC is contracting with the agent on behalf of the carriers. *See* Agent Reporting Agreement, Section XXVIII(B).

The complaint alleges that from December 1988 through September 1990, S & N, doing business as Superior Travel, issued airline tickets worth $374,711.68, for which it never paid ARC or the carriers. ARC claims that the following amounts are owed to each of the carriers:

| Carrier | Amount Claimed |
|---|---|
| American | $ 13,219.23 |
| Continental | 28,385.49 |
| Delta | 6,377.77 |
| Eastern | 20,838.76 |
| Northwest | 16,141.50 |
| TWA | 13,837.13 |
| United | 27,652.69 |
| Pan Am | 90,475.85 |
| USAir | 9,473.19 |
| Lan Chile | 4,150.34 |
| Air Portugal | 1,496.94 |
| Olympic | 11,800.58 |
| Alitalia | 15,101.59 |
| Air France | 13,235.62 |
| KLM | 15,315.42 |
| Iberia | 6,465.12 |
| Quantas | 1,795.70 |
| Swiss Air | 7,907.24 |
| El Al Israel | 858.52 |
| Scandinavian | 5,235.12 |
| British Airways | 19,444.11 |
| Aeromexico | 700.79 |
| UTA | 4,053.84 |
| Cathay Pacific | 11,890.04 |
| Thai Airways | 2,796.42 |
| Lufthansa | 2,716.06 |
| Austrian Air | 5,882.80 |
| America West | 6,464.51 |
| MGM Grand Air | 10,999.31 |
| Total | $374,711.68 |

At least two of the carriers have their principal place of business in New York. There is no evidence of the citizenship of the other carriers in the record.

ARC initiated this lawsuit in order to collect the money owed to the air carriers. Subsequently, each of the carriers assigned its claim to ARC. The assignment agreements read, in part:

> For value received assignor hereby transfers, assigns, and sets over to assignee, *for collection,* free and clear of any claims, liens, or other encumbrances whatsoever, all of assignor's right, title and interest, legal and equitable, in and to any and all claims submitted to the assignee which arise from the default of Superior Travel pursuant to the Agent Reporting Agreement and the Carrier Services Agreement.

(Emphasis added.) ARC admits that the money it collects will be paid to the individual carriers, less the cost of prosecuting the lawsuit. The assignments were made after ARC received the defendants' motion to dismiss for lack of subject matter jurisdiction. ARC describes the consideration paid by ARC for the assignments as follows:

> ... ARC's provision of a streamlined and cost-effective process for the reporting of carrier transactions by ARC accredited travel agents and the collection of funds generated by such transactions.

Plaintiff Airlines Reporting Corporation's Responses and Objections to Defendants' First Set of Interrogatories, Response to Interrogatory 5.

ARC also admits that at least part of the reason the carriers executed the assignments was their desire to remain in federal court. *See* Response of Plaintiff Airlines Reporting Corporation to Defendants' Renewed Motion to Dismiss, p. 14. The affidavit of John J. McHugh provides other reasons for the assignments. It asserts that because the defendants have a debt greater than $50,000, and because S & N voluntarily withdrew from ARC's approved list of agents, there is evidence that the defendants perpetrated a fraud on ARC and the air carriers. The recent indictment of defendant Walter Newmark for fraud against ARC supports this conclusion. As a result of this possible

fraud, ARC asserts that it wants to prevent the carriers from entering into individual settlement agreements with the defendants. ARC argues that the assignments will reduce duplication of effort, save costs, and result in a greater recovery for the individual carriers.

Consolidation of the airline claims in one federal suit would reduce burdens on the court. Forcing an individual claim by each airline into state courts would, however, discourage enforcement of some or all airline claims and thus might benefit defendants.

## II. *Law*

### A. *Agent and Principal*

If a contract is signed by an agent, and the instrument as a whole demonstrates the intent of the parties that the agent signed on behalf of a principal, and the agency relationship and the identity of the principal are clearly disclosed in the contract, then the principal, and not the agent, is a party to the contract. Restatement (Second) of Agency § 157 (1958). *Cf. Colonial Securities, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 1159, 1165 (S.D.N.Y. 1978). An agent cannot maintain an action on a contract in his own name on behalf of his principal unless he is a party to the contract, a transferee, or a holder of an interest in the contract. *Colonial Securities,* 461 F.Supp. at 1165 (citing Restatement (Second) of Agency §§ 363, 372 (1958)).

### B. *Standing and Real Party In Interest*

Rule 17 of the Federal Rules of Civil Procedure requires that a lawsuit be brought in the name of the real party in interest to the suit. Rule 17(a) states, in part:

> Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. . . . .

A person authorized to bring suit solely on the basis of a power of attorney is

not a real party in interest; courts have uniformly denied such a party the right to sue in its own name. *See Titus v. Wallick,* 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653 (1939); 3A Moore's Federal Practice § 17.10 (1993). *Cf. Asociacion Nacional De Pescadores A Pequena Escala O Artesanales De Colombia v. Dow Quimica De Colombia S.A.,* 988 F.2d 559, *reh'g denied,* 5 F.3d 530 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994); *ICON Group, Inc. v. Mahogany Run Dev. Corp.,* 829 F.2d 473 (3d Cir.1987). An assignee for the purposes of collection holds legal title to the debt and is a real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action. *See Titus v. Wallick,* 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653 (1939); *Rosenblum v. Dingfelder,* 111 F.2d 406, 407 (2d Cir.1940); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1545 (1990).

## C. *Diversity Jurisdiction*

### 1. *Diversity of Citizenship*

#### a. *In General*

■ Citizenship of the real party in interest is determinative for diversity purposes. Wright, Miller & Kane, *supra,* § 1556. Although one may be a real party in interest in the sense that the action is properly maintained in his or her name under Rule 17(a) of the Federal Rules of Civil Procedure, he or she is not necessarily the real party in interest for the purpose of determining diversity jurisdiction. *Wilsey v. Eddingfield,* 780 F.2d 614, 615 (7th Cir.1985). A party who has no significant personal interest in the outcome of the litigation cannot use his or her citizenship to transform a local controversy into one within the diversity jurisdiction of the federal court. As the court noted in *Wilsey:*

> A party who has no significant interest in the outcome of the litigation cannot use his citizenship to transform a local controversy into one within the diversity jurisdiction of a federal court. Thus, although one serving in a representative capacity is a real party in interest in the sense that the action is properly maintained in his name, Fed.R.Civ.P. 17(a), a representative is not

necessarily the real party in interest for the purpose of determining diversity jurisdiction. *Id.*

*Wilsey, supra,* 780 F.2d at 615.

### b. *Collusive Assignments*

Section 1359 of Title 28 of the United States Code prohibits diversity jurisdiction from being collusively provided by assigning claims. The Section states:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

■ This section mandates careful examination of transfers or assignments which might have the effect of creating federal jurisdiction. *Prudential Oil Corp. v. Phillips Petroleum Co.,* 546 F.2d 469, 474 (2d Cir. 1976). The reason for such an examination is clear:

> ... such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction.... Suits between local citizens not raising federal issues were to be confined to state courts....

*Id.*

The Second Circuit has held that Section 1359 should be construed broadly in light of the impact of modern technology which has increased interstate travel and country-wide communication, arguably reducing local prejudice to out-of-state parties—particularly large corporations doing business on a nation-wide scale. *Id.* at 475.

In *Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), a foreign corporation assigned outright to a Texas attorney its claims against the defendant, another foreign corporation. The attorney and the corporation executed a separate agreement which provided that the attorney would keep 5% of proceeds of any lawsuit, or attorney's fees, whichever was greater, and the remaining proceeds would go to the corporation. The attorney then brought a suit against the defendant in his own name. The attorney admitted that the

assignment had been made, in substantial part, to support jurisdiction in a federal court. The Court held that this was a collusive assignment in violation of § 1359, and that for the purposes of determining diversity jurisdiction, the citizenship of the foreign corporation would be used. The Court based its decision in part on the nature of the assignment and the fact that the assignor corporation retained the substantial interest in the litigation. It also relied on the evidence that the attorney had no prior connection with the case and on the admission of the attorney that the motivation for the assignment was to obtain federal jurisdiction. It stated:

> If federal jurisdiction could be created by assignments of this kind, which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties.

*Id.* at 828–29, 89 S.Ct. at 1490–91.

Once the question of jurisdiction is raised, the party asserting diversity jurisdiction has the burden of proving the assignment was not collusive. *Harvey Construction v. Robertson–Ceco Corp.,* 10 F.3d 300 (5th Cir.1994); *Prudential Oil, supra,* 546 F.2d at 476. Courts do not rely on any single factor to determine whether an assignment was designed to manufacture federal jurisdiction, but instead consider the totality of the circumstances. *See generally,* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3639 (1984).

If an assignment is made for a facially valid business purpose, and not to invoke federal jurisdiction, then the assignment is valid and the citizenship of the assignee is used to determine diversity jurisdiction. *Drexel Burnham Lambert Group, Inc. v. Galadari,* 777 F.2d 877 (2d Cir.1985). Factors that have been considered are the timing of the assignment, *see Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas,* 20 F.3d 987 (9th Cir.1994) (assignment three days before suit initiated was evidence of collusion); *Drexel Burnham, supra,* 777 F.2d at 881 (assignment 17 months before suit was evidence of valid business purpose), and the

consideration paid for the assignment. *See Dweck v. Japan CBM Corp.,* 877 F.2d 790 (9th Cir.1989) (the fact that no consideration was paid for assignment was evidence of collusion).

The Second Circuit has stated that Section 1359 was intended to prohibit any assignment whose "primary aim" was to obtain federal jurisdiction. *O'Brien v. Avco, Corp.,* 425 F.2d 1030, 1034 (2d Cir.1969). Assignments between related or affiliated companies have been held presumptively collusive in this circuit. *Prudential Oil,* 546 F.2d 469 (2d Cir.1976). *But cf., Herzog Contracting Corp. v. McGowen,* 976 F.2d 1062, 1067 (7th Cir.1992) (holding that if Congress had intended a presumption against assignments between affiliated companies, it could have indicated as much in a statute). In many cases, according to the Court of Appeals for the Second Circuit, even where there is a complete assignment, the assignor in fact retains an interest in the claim. *Prudential Oil, supra,* 546 F.2d at 475–76. The close relationship between assignor and assignee increases the possibility of collusion and often makes it more difficult to determine the true reason for the assignment. *Id.*

In *Prudential Oil,* Prudential–Delaware assigned its claim against a Delaware corporation to its wholly-owned subsidiary, Prudential–New York. *Prudential Oil, supra,* 546 F.2d at 477. Prudential–New York was a newly created subsidiary whose sole asset was the claim assigned by Prudential–Delaware. *Id.* The court held that there was no plausible business purpose for the assignment, and Prudential–Delaware stood to gain if Prudential–New York was successful in the suit. *Id.* The citizenship of Prudential–Delaware, not Prudential–New York, was considered for the purpose of determining diversity.

The Ninth Circuit has held that in cases of assignments between parent corporations and subsidiaries, the presumption of collusion requires that in order for the assignment to be valid for diversity purposes, the business reason for the assignment must be sufficiently compelling that it would have been made

absent the motivation to attain federal jurisdiction. *Nike, Inc., supra,* 20 F.3d at 992.

One court has held in a well reasoned opinion that even if one of the purposes of the assignment was to invoke federal jurisdiction, if it was also made for a "legitimate business reason," then the assignment is not collusively made. *Western Farm Credit Bank v. Hamakua Sugar Co.,* 841 F.Supp. 976 (D.Haw.1994). While the test of "any legitimate business purpose" seems sound from a commercial point of view, it has not been adopted thus far in the Second Circuit, apparently because it would extend the reach of federal diversity jurisdiction at a time when many federal judges are attempting to restrict such jurisdiction on the ground that it is too burdensome to federal courts. Nevertheless, the business purpose test is attractive and needs to be considered for general adoption.

### 2. *Amount in Controversy*

 In order for a federal court to have diversity jurisdiction the amount in controversy must exceed $50,000. 28 U.S.C. § 1332. A single plaintiff may aggregate all of its claims, related and unrelated, against a single defendant in calculating the amount in controversy. 1 Moore's Federal Practice § 0.97[1] (1991). Multiple plaintiffs may not aggregate their claims. 1 Moore's Federal Practice § 0.97[3] (1991).

 Where multiple entities with similar claims against one defendant utilize a power of attorney to allow their claims to be brought by one plaintiff, the claims may not be aggregated in calculating the amount in controversy. *Asociacion Nacional De Pescadores, supra,* 988 F.2d at 563. A single plaintiff may aggregate claims, even if the claims were assigned to the plaintiff by a third party, *Rock Drilling v. Mason & Hanger Co.,* 217 F.2d 687 (2d Cir.1954), unless the assignment was made collusively for the purpose of creating federal jurisdiction. *Pearson v. Nat'l Soc. of Public Accountants,* 200 F.2d 897 (5th Cir.1953); *National Recovery Systems v. Ornstein,* 541 F.Supp. 1131 (E.D.Pa.1982).

### III. *Application of Law to Facts*

### A. *Diversity of Citizenship*

Pursuant to the power of attorney, ARC, on behalf of all domestic air carriers that had executed Carrier Service Agreements, signed an Agent Reporting Agreement with S & N. The Agent Reporting Agreement was explicit that ARC was signing on behalf of each of the air carriers. What existed, in effect, were a number of identical agreements between each of the carriers and S & N.

 The power of attorney in the Carrier Service Agreements gave ARC the right to bring suit on behalf of the carriers against S & N for the purpose of collecting funds owed to the carriers under the Agent Reporting Agreement. Persons who are authorized to bring suit solely on the basis of a power of attorney are not real parties in interest as required by Rule 17(a) of the Federal Rules of Civil Procedure. It follows that before the assignments were executed ARC was not the real party in interest, and the carriers would have had to have been joined as independent parties under Rule 19(a) of the Federal Rules of Civil Procedure.

The carriers assigned their claims to ARC after the suit was initiated. The assignments are suspicious for several reasons. First, the assignments were made only after the jurisdiction of this court was challenged by the defendants. Second, while the assignments on their face transfer all right, title and interest in the claims to ARC, in reality, the carriers retain the primary interest in the claims because ARC has agreed to transfer to the carriers any money obtained from the litigation, less the cost of prosecuting the case. Third, ARC paid no meaningful consideration for the assignments. Even without the presumption of collusion, ARC has not met its burden of showing that the assignments were not made primarily to obtain federal jurisdiction. For purposes of diversity jurisdiction these post-suit assignments are "collusive." The assignor is the real party in interest and diversity is lacking as to at least some of the airlines with claims.

There is no evidence in the record to show where the interested carriers are incorporated or where they conduct business. The

defendants allege without contradiction that two carriers, including Pan Am, have principal places of business in New York. Those two carriers do not meet the requirements of diversity of citizenship.

### B. *Amount In Controversy*

Multiple plaintiffs may not aggregate their claims against a single defendant. Before the assignments were made, the carriers could not have aggregated their claims in calculating the amount in controversy. The only carrier with a claim of more than $50,-000 against S & N is the carrier that the parties apparently agree has or had its principal place of business in New York.

### Conclusion

The claims are dismissed.

Plaintiff will have 30 days to prove that Pan Am's citizenship for the purposes of diversity jurisdiction is not New York. If it can do so, it may move to reinstate as to this airline.

Dismissal is undesirable as a matter of policy. A reevaluation of the cases by the court of appeals in light of commercial necessities and realities is desirable.

SO ORDERED.