The CANTON INDUSTRIAL CORP., a Nevada corporation, Plaintiff,

v.

MI–JACK PRODUCTS, INC., an Illinois corporation, MJMC, Inc., an Illinois corporation, and Lanco International, Inc., an Illinois corporation, Defendants.

No. 95–C–0651–S.

United States District Court,
D. Utah,
Central Division.

July 8, 1996.

Michael S. Golightly, Thomas C. Swallow, Salt Lake City, UT, for Plaintiff.

Scott W. Christensen, Hanson Epperson & Smith, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION

SAM, District Judge.

Before the court are: (1) the motion of defendants Mi–Jack Products, Inc., MJMC, Inc., and Lanco International, Inc. to dismiss the amended complaint; and (2) the motion of plaintiff Canton Industrial Corporation to strike points I and II of defendants' reply memorandum in support of their motion to dismiss. The court, having reviewed the memoranda submitted by the parties, will

rule on the motions without the assistance of oral argument, pursuant to D.Ut. 202(d).

## BACKGROUND

The following facts have been gleaned from the amended complaint and the parties' memoranda. Canton Tire Recycling Corporation (Canton Tire), an Illinois corporation with its principal place of business in Canton, Illinois, entered into contracts with defendants Mi–Jack Products, Inc., MJMC, Inc., and Lanco International, Inc. in connection with its tire recycling business. Each of the defendants is an Illinois corporation, having its principal place of business in Hazel Crest, Illinois. After Canton Tire ceased its tire recycling operations, thousands of waste tires remained on its work site.

Canton Tire is a former subsidiary of Canton Industrial Corporation (Canton Industrial). On September 30, 1994, Canton Industrial entered into a Corporate Acquisition Agreement with Sabina Services Corporation, a Utah corporation formed in July 1994, whereby Sabina Services purchased Canton Tire. However, on October 1, 1995, Sabina Services was involuntarily dissolved for failure to file an annual report. Notice of the dissolution was mailed to Ruairidh Campbell, the sole reference in Sabina Services' corporate records, who was also serving as a director of Canton Industrial.

In February 1994, the Illinois Environmental Protection Agency brought suit in Illinois state court against Canton Tire, Canton Industrial, and others, alleging used tire and hazardous waste violations on the Canton Tire site and requesting permanent injunctive and other relief. On March 24, 1994, Canton Industrial voluntarily entered into an interim consent order relative to the EPA litigation. Canton Industrial failed to comply with the interim consent order and, on May 31, 1995, the Illinois court entered a contempt order against Canton Industrial. The Illinois court then denied Canton Industrial's motion to modify the contempt order and, on July 13, 1995, entered an order confirming the May 1995 contempt order.

Also on July 13, 1995, Canton Tire executed an Assignment of Interest and Rights (the Assignment) whereby Canton Tire assigned to Canton Industrial "all rights, title and interest ... arising out of or in any way related to the Canton Tire Recycling site and/or any business relationship with Mi–Jack Products, Inc." In the Assignment, Canton Tire acknowledged that, "at the time of negotiating with and entering into that certain equipment lease agreement with Mi–Jack Products, Inc.," Canton Tire "was a wholly owned subsidiary" of Canton Industrial. One day later, on July 14, 1995, Canton Industrial, a Nevada corporation authorized to do business in Utah, brought suit in this court against Mi–Jack Products, Inc., claiming jurisdiction based upon diversity. On August 17, 1995, Canton Industrial amended its complaint to include defendants MJMC, Inc. and Lanco International, Inc.

Defendants Mi–Jack Products, Inc., MJMC, Inc., and Lanco International, Inc. now move to dismiss plaintiff's amended complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, based upon lack of subject matter jurisdiction. Included within defendants' reply memorandum is a motion to strike a portion of the Affidavit of Kevin Woltjen, submitted in support of plaintiff's memorandum in opposition to defendants' motion to dismiss. Additionally, plaintiff moves to strike portions of defendants' reply memorandum which address personal jurisdiction and venue.

## ANALYSIS

■ Plaintiff alleges subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a) (1993), i.e., diversity jurisdiction, because the matter involves citizens of different states. *See* Amended Complaint, ¶ 1. Plaintiff is a Nevada corporation authorized to do business in Utah, and all defendants are Illinois corporations. Defendants contend plaintiff has manufactured diversity jurisdiction inappropriately through the use of the Assignment, thus depriving this court of jurisdiction pursuant to 28 U.S.C. § 1359 (1993). A determination of subject matter jurisdiction presents a question of law for the court. *See Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994); *Yokeno v. Mafnas*, 973 F.2d 803, 806 (9th Cir.1992).

Under Section 1359, "[a] district court shall not have jurisdiction of a civil action in which *any party, by assignment* or otherwise, *has been improperly or collusively made or joined* to invoke the jurisdiction of such court." (Emphasis added). Section 1359 " 'is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts.' " *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 916 (10th Cir.1993), (quoting *Yokeno*, 973 F.2d at 809), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994). Therefore, "a party charged with creating jurisdiction by collusion bears the burden of demonstrating that jurisdiction is proper." *Id.*

In general, the assignee may meet this burden by offering " 'evidence that the transfer was made for a legitimate business purpose unconnected with the creation of diversity jurisdiction.' " *Western Farm Credit Bank v. Hamakua Sugar Co., Inc.*, 841 F.Supp. 976, 981 (D.Hawaii 1994) (quoting *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir.1976)). However, courts analyzing various diversity-creating assignments, have determined some of these assignments necessitate a heightened scrutiny. Assignments " 'between parent companies and subsidiaries' " are " 'presumptively ineffective to create diversity jurisdiction.' " *Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas*, 20 F.3d 987, 991 (9th Cir.1994) (quoting *Yokeno*, 973 F.2d at 809–10). Courts conclude " 'the close relationship between parent and subsidiary necessarily presents opportunities for the collusive manufacture of' commercial reasons for the assignment." *Id.* (quoting *Prudential Oil Corp.*, 546 F.2d at 476). In fact, when a wholly-owned subsidiary assigns a claim to its parent, " 'the same set of stockholders running both corporate forms can transfer title to that claim freely between them' ", retaining a " 'substantial pecuniary interest in the outcome of the litigation which it assigns to the other.' " *Id.* at 992 (quoting *Prudential Oil Corp.*, 546 F.2d at 475–76). To rebut this presumption of collusion, "the party asserting diversity must show a legitimate business reason for the assignment." *Western Farm*, 841 F.Supp.

at 981. That is, "[s]imply showing a colorable or plausible business reason for the assignment will no longer suffice.... 'The business reason must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum.' " *Nike*, 20 F.3d at 992 (quoting *Yokeno*, 973 F.2d at 811).

At the outset, the court notes that, absent the Assignment, no diversity jurisdiction would exist in this case. Canton Tire, an Illinois corporation holding all the rights and interest relative to the Canton Tire recycling site and the business relationships with defendants, would have had to initiate suit against defendants, also Illinois corporations, in Illinois state court. Thus, only through the Assignment to Canton Industrial, a Nevada Corporation doing business in Utah, was a federal suit possible. Plaintiff points out that, at the time of the Assignment, Canton Tire was no longer its subsidiary but had been purchased by Sabina Services Corporation. However, Canton Tire, Canton Industrial, and Sabina Services have enjoyed close corporate relationships. Not only is Canton Tire a former wholly-owned subsidiary of Canton Industrial, but the three entities have shared officers, directors, and business addresses as well. In fact, the only corporate reference for Sabina Services is a director of Canton Industrial. In light of these close associations, the diversity created by the Assignment, and the increased possibility of collusion, the court concludes the application of the heightened scrutiny standard is warranted in evaluating the Assignment. *See, e.g.*, *Prudential Oil Corp.*, 546 F.2d at 475 (heightened scrutiny appropriate "in the case of assignments between related or affiliated corporations since common ownership or the control of one of the other only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose").

The *Western Farm* court succinctly summarized several factors district courts must consider in assessing, under the heightened scrutiny standard, whether assignments are legitimate or merely pretextual. They include:

(1) whether and to what extent the assignee has a preexisting financial interest, (2) whether adequate consideration exchanged hands, (3) whether the underlying motivation of the assignment involved a sufficiently compelling business purpose that the assignment would have been made absent the purpose of gaining a federal forum, (4) whether the timing of the assignment supports an inference that the assignment was not entered into to create diversity, (5) whether the assignor has transferred all interest in the litigation, and (6) whether the assignee is financing the litigation.

*Western Farm,* 841 F.Supp. at 982.

■ Applying these factors to the instant case and acknowledging that plaintiff has the burden of establishing the Assignment creates proper jurisdiction in this court, the court first considers plaintiff's claim of a preexisting financial interest. Plaintiff initially contends it had a preexisting financial interest because "it was responsible for payment of the expenses incurred by the operation of Canton Tire based in Canton, Illinois, during its original start up in 1992." Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, p. 2. Additionally, the Affidavit of Kevin Woltjen states Canton Industrial Corporation loaned Canton Tire over $233,000.00 in operating expenses. Finally, plaintiff states it is currently responsible for the clean-up and the financing of the clean-up of the Canton Tire site. The court notes the record reveals the existence of several corporate entities, including: (1) the Canton Industrial Corporation, incorporated in Ohio and formerly doing business in Illinois; (2) the Canton Industrial Corporation, incorporated in Nevada and presently doing business in Utah; and (3) the Canton Industrial Corporation of Salt Lake City, incorporated in Utah. The defendant in the Illinois EPA suit, and the alleged owner and operator of the tire recycling site, was the Canton Industrial Corporation incorporated in Ohio. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss, Attachment A, ¶ 2. The Assignment applicable to the instant case, however, was made from Canton Tire to the Canton Industrial Corporation incorporated in Nevada. Moreover, it is the Nevada entity which has brought suit in this court. Plaintiff has made no effort to explain the relationship between the corporate entities or which entity it is addressing in its claim of a preexisting financial interest. Furthermore, plaintiff has provided virtually no evidence or documented support for its alleged financial interest. Under these circumstances, the court concludes plaintiff has not met its burden of demonstrating a preexisting financial interest.

Second, plaintiff claims it "provided consideration for the assignment by assuming the liability for the clean-up of the recycling site." Plaintiff's Memorandum in Opposition, pp. 2–3. The court agrees with defendants that plaintiff's statement is not only unsupported by documentary evidence but conflicts with the contempt order entered by the Illinois state court on May 31, 1995. The contempt order establishes Canton Industrial Corporation's liability for cleaning up the tire site almost two months before the Assignment, dated July 13, 1995, was even made. Accordingly, the court concludes plaintiff has provided no proof of adequate consideration or that it actually exchanged hands.

Third, the court must explore the underlying motivation for the Assignment to satisfy itself that the Assignment would have been made in the normal course of business, regardless of the possibility of a federal suit. Plaintiff asserts "[t]he underlying motivation of the assignment was made for business and economic purposes relating to financial difficulties which Canton Tire was experiencing." Plaintiff's Memorandum in Opposition, p. 3. Plaintiff argues essentially that the Assignment was necessary, and based upon a valid business purpose, due to Canton Tire's financial inability to comply with the court orders by cleaning up the tire recycling site. Plaintiff's arguments conflict with the documentary evidence. The Illinois court orders of May 31, 1995 and July 13, 1995 establish Canton Industrial's liability and responsibility for cleaning up the tire recycling site. Additionally, the Assignment itself recites that Canton Industrial Corporation "is currently responsible for clean up of that [Canton Tire Recycling] site as mandated" by the Illinois court. Thus, it would appear that

Canton Industrial was already financially responsible for the Canton Tire recycling site, regardless of the Assignment. Moreover, had Canton Tire wanted redress against defendants, all Illinois corporations, for providing allegedly defective equipment, it had only to bring suit against them in Illinois state court. Finally, in the instant suit, plaintiff asserts no federal causes of action but brings claims for breach of contract, intentional misrepresentation, negligent misrepresentation, breach of express warranty, and breach of implied warranty. It, thus, appears plaintiff has used the Assignment to create diversity and "inappropriately channel ordinary business litigation into the federal courts." *Amoco Rocmount,* 7 F.3d at 916 (citations omitted). Under these circumstances, the court concludes plaintiff has not established a sufficiently compelling business purpose for the Assignment, absent gaining a federal forum.

Fourth, the timing of the Assignment relative to when plaintiff filed this suit cuts against plaintiff. "When an assignment is entered into shortly before a diversity action is brought, an inference that the assignment was entered into for the purposes of creating diversity arises." *Western Farm,* 841 F.Supp. at 984. In the instant case, the Assignment was executed on July 13, 1995, and plaintiff filed suit in this court on July 14, 1995. The speed with which plaintiff acted to obtain a federal forum raises further doubt about plaintiff's alleged business purposes for the Assignment. *See Nike,* 20 F.3d at 992.

With regard to the final factors, plaintiff submits Canton Tire has transferred all of its interest in this litigation to plaintiff, and plaintiff is funding the litigation. The Assignment recites Canton Tire's conveyance of rights concerning the tire recycling site and business relations with Mi–Jack Products, Inc.; however, plaintiff offers no supporting evidence or proof of financing the litigation.

Considering the totality of the circumstances surrounding the Assignment, the court concludes plaintiff has failed to meet its burden, under the heightened scrutiny standards, of rebutting the presumption that the Assignment was entered into in order to create diversity jurisdiction. This court, therefore, concludes it lacks subject matter jurisdiction, pursuant to 28 U.S.C. § 1359 (1993).

## CONCLUSION

In sum, the court has determined it lacks subject matter jurisdiction and, accordingly, GRANTS defendants' motion to dismiss with prejudice. Regarding defendants' motion to strike a portion of the Affidavit of Kevin Woltjen, the court has given what weight it deemed appropriate to the statements contained therein. Finally, in view of the court's disposition of defendants' motion to dismiss, the court need not reach defendants' personal jurisdiction and venue arguments, rendering plaintiff's motion to strike points I and II of defendants' reply memorandum moot. The court clerk is directed to enter judgment accordingly, pursuant to Rule 58 of the Federal Rules of Civil Procedure.